UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6198-CR-HURLEY

UNITED STATES OF AMERICA,

       Plaintiff,

-vs-

MAXIMILLIAN C. MATETICH,

       Defendant.

_____/

## GOVERNMENT'S MOTION TO STAY
## MAGISTRATE'S ORDER RELEASING DEFENDANT ON BOND

The United States, by and through the undersigned Assistant United States Attorney, files

this Motion to Stay Magistrate's Order Releasing Defendant on Bond and in support thereof states

as follows:

1.   Magistrate Judge John J. O'Sullivan has entered an order releasing the defendant

MAXIMILLIAN C. MATETICH on bond.  Magistrate Judge O'Sullivan stayed his order until

NOON on August 30, 2000 to allow the government the opportunity to apply for a stay to the

District Court.  The government requested pretrial detention on the basis of danger to the

community and risk of flight.  In sum, the government believes that the defendant is a danger to the

community because of his admitted importation of esctasy into the United States from Europe.  At

1



the pretrial detention hearing, the defendant did not contest the facts stated in the Complaint (Attached hereto as Exhibit A). On the consentual tapes, the defendant states that he has network in place in Europe and Canada for the purpose of distributing ecstasy and he discusses the movement of money from Canada to the United States. The defendant admitted that a he owes a debt of $100,000 for ecstasy. The arresting agents seized the defendant's ledger book. Very large amounts of money are involved in the ecstasy business. There are no conditions of bond that can prevent the defendant from making telephone calls to persons in Europe and Canada in furtherance of the distribution of drugs and the collection of drug proceeds. The defendant has every incentive to try to collect the money that is owed to him. The defendant has no means of employment if released on bond, because he is in the this country illegally. The government believes that the defendant is a risk of flight. The defendant has homes in Canada and in Spain. He has no incentive to stay in this country and face a federal prison sentence.

2. After the initial pretrial detention hearing on August 18, 2000, the government moved to re-open the hearing based on new evidence (Government's Motion to Reopen is attached as Exhibit B, along with a Transcript of the initial hearing) The Magistrate Judge granted that motion and heard the new evidence on August 28, 2000 at approximately noon. The government has attached hereto the reports and affidavit submitted to the Magistrate Judge at that hearing (Exhibit C). Following that hearing at which Mr. Swears and Ms. Caravano testified, the Court ruled that it would continue to accept Randy Swears and Marie Ange Caravano as sureties on a $500,000 bond and a $100,000 corporate surety bond, requiring Ms. Caravano to live with and act as custodian for the defendant. The government respectfully objects to Mr. Swears as a surety on several grounds. His boat inventory which would collateralize the bond was not restrained by the court. The

2

government is concerned about Mr. Swear's prior business associations as set forth in the reports and the fact that the defendant could simply reimburse Mr. Swears for the bond amount. The government objects to Ms. Caravano as a surety. Ms. Caravano is a young 23 year old, a foreign national with no assets whatsoever. The government would refer this court to the Affidavit of Mr. Zamarano concerning the ability of Ms. Caravano to control the whereabouts and activities of the defendant. The transcript of the testimony of Mr. Swears and Ms. Caravano and the subsequent rulings of the Magistrate on August 29, 2000 at the hearing on the Motion to Reopen in Miami has been ordered expedited and should be available to this Court by Tuesday, September 5, 2000 at the latest. (Monday is Labor Day).

WHEREFORE, the government moves the District Court to stay the order of the Magistrate Judge releasing the defendant on bond until the government has obtained the transcript of the hearing held yesterday in Miami and further files its Motion for Revocation of Order Releasing the Defendant on Bond. The Magistrate Judge has stayed his order only until NOON on August 30, 2000.

Respectfully submitted,

GUY S. LEWIS
UNITED STATES ATTORNEY

By: _Nancy Vorpe Quinlan_
NANCY VORPE QUINLAN
Assistant United States Attorney
Florida Bar No. 0593532
500 Australian Avenue
West Palm Beach, Florida 33401
Tel: (561) 820-8711 ext 3054
Fax: (561) 820-8777

3

AO 91 (Rev. 5/85) Criminal Complaint          AUSA VORPE QUINLAN



# *United States District Court*

_____ SOUTHERN _____ DISTRICT OF _____ FLORIDA _____

UNITED STATES OF AMERICA

V.                                                **CRIMINAL COMPLAINT**

MAXIMILLIAN CHARLES MATETICH          **CASE NUMBER:**

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my

knowledge and belief. On or about July 5, 2000 through July 24, 2000 in Broward and Dade county, in the

_____ Southern _____ District of Florida, the defendant, did knowingly and intentionally combine, conspire, confederate and agree to commit an offense against the United States, that is, to violate Title 21, United States Code, Section 952. It was the purpose and object of this conspiracy to knowingly and intentionally import into the United States from outside the United States a mixture and substance containing a detectable amount of 3,4-Methylenedioxymethamphetamine (commonly known as MDMA or "Ecstasy"), a Schedule I controlled substance.

in violation of Title __21__ United States Code, Section(s) __963_____

I further state that I am a(n) U.S. Drug Enforcement Administration, S/A ___ and that this complaint is based on the
following facts:                                          Official Title

Please see attached affidavit.

> Exhibit "A"

Continued on the attached and made a part hereto:  [x] Yes  [ ] No

_____
Signature of Complainant
**Special Agent Chris W. Mathes**
**U.S. Drug Enforcement Administration**

Sworn to before me, and subscribed in my presence,

THE COURT FINDS PROBABLE CAUSE.

__July 25, 2000_____ at ____Miami, Florida_____
Date                                        City and State

WILLIAM C. TURNOFF
UNITED STATES MAGISTRATE JUDGE          _____
Name and Title of Judicial Officer                    Signature of Judicial Officer

COPY

## BOND RECOMMENDATION


### MAXIMILLIAN CHARLES MATETICH,

Defendant.


Pre-trial Detention is recommended.


_____
Nancy Vorpe Quinlan
Assistant U. S. Attorney

COPY

# AFFIDAVIT

I, Christopher W. Mathes, being duly sworn, depose and say:
I am a Special Agent with the United States Drug Enforcement
Administration ("DEA"), and have been so employed since March
1998.  Prior to that employment, I was a Police Officer
assigned to the Criminal Investigations Division, with the
Johnson City Police Department, Johnson City, Tennessee, for
five and one half years.  I have completed in excess of 1,200
hours of basic and advanced law enforcement instruction
within the states of Tennessee and Florida as well as the DEA
Academy.  During my employment with DEA, I have received
specialized training regarding the investigation and
enforcement of drug violations and have actively participated
in numerous investigations related to persons involved in the
trafficking and importation of drugs, including MDMA, also
known as Methylnedioxymethamphatamine (Ecstasy).

1.  This affidavit is based upon an ongoing drug
    investigation, conversations with other law enforcement
    officers, information obtained through training and
    experience, enforcement activity previously conducted,
    and a series of taped meetings and telephone
    conversations.

2.  Beginning on July 5, 2000, approximately 30,000 dosage
    units of MDMA were seized in an on going DEA
    investigation. More particularly, on July 5, 2000 a
    sample of eight MDMA dosage units, bearing the emblems of

"A1" or a star symbol were seized. On July 7, 2000,
approximately 10,000 dosage units of MDMA were seized
bearing the emblems of "A1" or a star symbol.  On July
12, 2000, approximately 10,000 dosage units were seized,
further bearing the emblems of "007" or a triangle
symbol.  On July 14, 2000, approximately 10,000 dosage
units were seized, further bearing the emblem of "007".
Subsequent to the seizures of the MDMA, two defendants
were arrested and further cooperated in the
investigation.  These defendants named their source for
the ecstasy, a person named "Charlie" Matetich.  The
dosage units of the seized MDMA have further been tested
by the Southeast Regional DEA Laboratory and confirmed
positive for the presence of MDMA (ecstasy).

3.  Beginning on or about July 20, 2000, a DEA Confidential
Source (CS) had a series of recorded telephone
conversations with an individual now identified as
Maximillian Charles MATETICH in Europe and in Canada.
During these telephone conversations, MATETICH and the CS
discussed the previous shipments of MDMA as described
above, that is, the shipments of MDMA on July 5, July 7,
July 12, and July 14, 2000.  They discuss the symbols on
the tablets, namely the the "007", the stars, the
triangles, and the A1 symbols.  They further discuss that
the shipments were not good quality, and they discuss
doing another deal for 10,000 pills, for a price of
$24,000.00.  Also, an amount of $4200.00 had to be sent

to pay off a previous debt for ecstasy pills.  On Friday, July 21, 2000, DEA sent a series of Western Union money transfers to Amsterdam in the Netherlands representing the $4200.00.  In a subsequent telephone conversation between the CS and Matetich, they discuss the Western Union tracking numbers for the $4200.00.  DEA confirmed that the $4200.00 was retrieved in the Netherlands the next day.

4.  On July 24, 2000, Matetich arrived by airplane at the Fort Lauderdale, Florida airport from Canada.  The CI met Matetich at the airport.  The CI was wired for transmission of the conversations between the CI and Matetich .  The DEA agents heard Matetich state that he had received the $4200.00.  On that same day, Matetich was taken into custody in Miami, Florida.  After being advised of his Miranda rights, Matetich admitted that he was in the ecstasy business.  He disclosed the name of his source for ecstasy and stated that he owed this source $100,000.00.  Agents also seized a ledger book which Matetich stated memorialized the debt of $100,000.00 to this source.

5.  Based upon the foregoing events, I have probable cause to believe that Maximillian Charles MATETICH imported a controlled substance, namely MDMA, in violation of

Title 21, United States Code, Sections 952 and 963.

FURTHER AFFIANT SAYETH NAUGHT

_____
CHRIS MATHES
DEA SPECIAL AGENT

Sworn to and subscribed before me
this ____ day of July 2000 in
Miami, Florida.

_____
WILLIAM C. TURNOFF
UNITED STATES MAGISTRATE JUDGE



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6198-CR-HURLEY


UNITED STATES OF AMERICA,

       Plaintiff,

-vs-



MAXIMILLIAN C. MATETICH,

       Defendant.

_____/

### GOVERNMENT'S MOTION TO REOPEN PRETRIAL DETENTION
### and MOTION FOR NEBBIA INQUIRY

The United States, by and through the undersigned Assistant United States Attorney, files

this Motion to Reopen the Pretrial Detention Hearing pursuant to Title 18, U.S.C. 3142(f) and

Motion for Nebbia Inquiry pursuant to Title 18, U.S.C. 3142(g)(4) and in support thereof states as

follows:

    1. A pretrial detention hearing was held before Magistrate Judge John O'Sullivan on Friday,

August 18, 2000. At the conclusion of the hearing, Magistrate Judge O'Sullivan denied the

government's request for pretrial detention and ordered the defendant to be released on conditions

of bond. The United States Attorney's Office has received the transcript of the hearing (attached

hereto). Based on the oral pronouncements in court, the conditions include inter alia: $100,000.00

1

corporate surety bond, cosigned by the defendant's fiancee[1] and Mr. Randy Swears; and a $500,000.00 personal surety bond co-signed by the defendant's fiancee and Mr. Randy Swears; along with a <u>Nebbia</u> condition.

2. While the pretrial detention hearing was ongoing in Miami,[2] undersigned counsel, who is assigned to this case, contacted U.S. Customs concerning the defense witnesses that were set forth in the pleading styled "Motion in Support of Bond" that the government received the afternoon before the hearing. At approximately 11:30 am on Friday, August 18, 2000, undersigned counsel learned that there is a file at U.S. Customs which reflects that in 1996, a vessel was seized in an international money laundering prosecution. Mr. Swears told Customs agents over the telephone the seized vessel was his vessel. Mr. Swears agreed to be interviewed. Although the vessel was worth $100,000, Mr. Swears failed to appear at 2 interviews scheduled by U.S. Customs agents. The vessel was ultimately forfeited. The government has contacted the case agent, now stationed in Berlin, Germany. Matters contained in the Customs file may have some bearing on the Court's decision concerning the sureties and may be relevant as to the <u>Nebbia</u> condition.

3. Secondly, the transcript of the hearing reflects that the Court agreed to accept Ms. Marie Ange Caravano, age 23, a French citizen in this country on a temporary visa which expires in September, as a co-signor on a $100,000 corporate surety bond and as a co-signor on a $500,000 personal surety bond. The Court referred to Ms. Caravano as the defendant's fiancee. The Court inquired of Ms. Caravano whether she would be residing with the defendant and she indicated that

---

[1]The Pretrial Services Report refers to Ms. Caravano as the defendant's fiancee.

[2]Undersigned counsel's mother was scheduled for surgery at 1:00 pm on Friday, August 18, 2000.

she would. The Court then ordered that Ms. Caravano act as a custodian of the defendant, promising to alert a Pretrial Services Officer if the defendant was not at home with her in compliance with the Court imposed curfew. The case agents, mindful that the defendant, Mr. Matetich was heard on the consentual recordings to be lamenting that Ms. Caravano was now dating a lawyer, contacted that lawyer to confirm Ms. Caravano's current residence.   Yesterday afternoon, the government interviewed the lawyer who advised that Ms. Caravano has been in a relationship with him.  He stated that Ms. Caravano does not reside in the defendant's apartment,  rather she lives in her own apartment and has been living there for some period of time.  The lawyer advised that Ms. Caravano consulted with her mother concerning the arrest of the defendant and her mother advised her not to say anything or sign anything.  Ms. Caravano told the lawyer after the Pretrial Detention hearing on Friday that she did not understand the implications of a bond or that she would be liable to the United States government.   This lawyer, who is a trial lawyer in Miami, told the government that he would be willing to testify before this Court has to his knowledge of the facts.

3.  The government's suggestion is that, in light of the conflicting information concerning Ms. Caravano's residence and engagement,  it would be unfair to the United States and to Ms. Caravano for Ms. Caravano who is only 23, a citizen of France and has no assets, to be liable for $600,000 to the United States government should the defendant flee.   It would also put Ms. Caravano at risk should the defendant violate his curfew or violate the law by continuing to engage in his international ecstasy business.

4.  The government asks the court to review the information from U.S. Customs and revisit

3

the issues concerning Ms. Caravano at a further hearing to be set by the Court.

Respectfully submitted,

GUY S. LEWIS
UNITED STATES ATTORNEY

By: *Nancy Vorpe Quinlan*

NANCY VORPE QUINLAN
Assistant United States Attorney
Florida Bar No. 0593532
500 Australian Avenue
West Palm Beach, Florida 33401
Tel: (561) 820-8711 ext 3054
Fax: (561) 820-8777

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the Government's Motion to Reopen the Pretrial Detention hearing by fax to Howard Srebnick, Esquire this 23rd day of August, 2000.

*Nancy Vorpe Quinlan*

NANCY VORPE QUINLAN
Assistant United States Attorney

4

Aug-22-00  02:52P                                                              P.02

1                          UNITED STATES DISTRICT COURT
                           SOUTHERN DISTRICT OF FLORIDA
2                                 MIAMI DIVISION

3

4

5      UNITED STATES OF AMERICA,              No: 00-3131-TURNOFF

6                     Plaintiff,              Miami, Florida
                                              August 18, 2000
7           v.

8      MAXIMILLIAN MATETICH,

9                     Defendant (s).

10     _____  _____  _____/

11

12            TRANSCRIPT PRETRIAL DETENTION HEARING
            BEFORE THE HONORABLE JOHN J. O'SULLIVAN,
13              UNITED STATES MAGISTRATE JUDGE.

14

15     APPEARANCES:

16     For the Plaintiff:        DAVID WEINSTEIN,
                                 Asst. U. S. Attorney
17                               99 N.E. 4th Street
                                 Miami, Florida  33132-2111
18
       For the Defendant:        HOWARD SREBNICK, ESQ.
19

20

21     Transcriber:              F. Levy

22

23

24

25

2

1                              I N D E X

2    RANDALL SWEERS

3    CROSS EXAMINATION
     BY MR. WEINSTEIN   . . . . . . . . . . . . . . . . . 19
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Accurate Reporting Services, Inc.
Third Floor
172 West Flagler Street
Miami, Florida 33130

3

1          THE COURT:  United States vs. Maximillian

2    Matetich.

3          MR. SREBNICK:  Good morning again, Your Honor.

4          THE COURT:  Good morning.

5          MR. SREBNICK:  Howard Srebnick on behalf of Mr.

6    Matetich, is the way it's pronounced.

7          THE COURT:  Matiche (phonetic).

8          MR. SREBNICK:  Yes, Your Honor.  But it's

9    spelled correctly M-A-T-E-T-I-C-H.

10          THE COURT:  Okay.

11          MR. SREBNICK:  I'm here as temporary counsel for

12    the pretrial detention hearing.  I was going to ask that

13    the arraignment and the report re counsel be deferred

14    until ten days from now, August 29th or 30th, somewhere in

15    there, whatever is convenient for the Court.

16          THE COURT:  Okay.

17          MR. SREBNICK:  So that I can conclude my

18    arrangements with Mr. Matetich for permanent

19    representation.

20          MR. WEINSTEIN:  Good morning, Your Honor.  David

21    Weinstein on behalf of the United States.  I'm standing in

22    for Nancy Vorpe-Quinlan.

23          Your Honor, this case has been indicted.  It's a

24    Judge Hurley case out of Fort Lauderdale, so any reports

25    with regard to report re counsel and/or arraignment, if we

4

1    could set those in the division where this case is

2    assigned.

3              THE COURT:  In West Palm.

4              That would be appropriate, wouldn't it, Pilar?

5    Okay.

6              MR. SREBNICK:  Judge, we're prepared to go

7    forward with the PTD hearing today.

8              THE COURT:  Okay.  The case number is --

9              MR. WEINSTEIN:  I have it here, Your Honor:

10   6198-Hurley, 00-6198-Hurley.

11             MR. SREBNICK:  Judge, since it's just a

12   formality, since I'm in Miami and Mr. Matetich is in Miami

13   and we don't need the actual prosecutor in the case, if

14   possible could we just keep the arraignment for the duty

15   so that I can not have to travel for the five minute

16   formality; is that possible?

17             THE COURT:  Where will this defendant be housed,

18   Marshal?

19   He's on a Hurley case, will he stay here at the Federal

20   Detention Center?

21             THE MARSHAL: More than likely.  Once he goes up

22   for the case, then he'll be housed in one of the local

23   jails.

24             THE COURT:  Okay.  Yeah, I'll set it here, then.

25             August 29th at 10 a.m. for arraignment and

1    report re counsel.

2         No further continuances on the arraignment or

3    the report re counsel.

4         MR. SREBNICK:  Understood.

5         We're also on for bond.

6         THE COURT:  Today, yeah.

7         Could I see a copy of the indictment?

8         MR. SREBNICK:  Does Your Honor have a copy of

9    the motion that I submitted yesterday?

10        THE COURT:  Yeah, I got that motion.

11    (Brief pause.)

12        MR. WEINSTEIN:  Does Your Honor have a copy of

13    the complaint that was filed?

14        THE COURT:  I do have a copy of the complaint,

15    yeah.

16        Can I keep this, or do you need it?

17        MR. WEINSTEIN:  I need it back.  If somebody can

18    make a copy of it.

19        THE COURT:  Okay.  You can have it back, just --

20    I don't need it.  We need one for the court file,

21    somewhere along the way because there's none in the file

22    down here, but we can get it from you at the end.

23        Or maybe after this hearing, you can go to my

24    chambers and copy it, and deliver a copy to Pilar.

25        MR. SREBNICK:  Your Honor, may we approach in

6

1    camera on one matter, both parties?

2          THE COURT:  Okay.

3      (In camera discussion.)

4          THE COURT:  Okay, is the government prepared to

5    go forward on the detention hearing?

6          MR. WEINSTEIN:  We are, Your Honor.

7          THE COURT:  And is the defense prepared?

8          MR. SREBNICK:  We are, Your Honor.

9          THE COURT:  Okay.

10         All right, let me hear from the government

11   first.

12         MR. WEINSTEIN:  Your Honor, we would adopt the

13   factual allegations that are contained within the

14   complaint that was filed before Judge Turnoff.

15         In addition to that, this case has been indicted

16   so there are presumptions that attach.

17         At this point we're proceeding on risk of flight

18   and danger to the community.

19         This is a crime that's punishable by more -- a

20   maximum penalty of more than ten years.  We're talking

21   about 50,000 pills of Ecstasy here, at the bare minimum,

22   which, by conversion and computation, is approximately a

23   Level 28.

24         There is no minimum mandatory, but he's looking

25   at about 78 to 97 months.

7

1         This defendant, as laid out in the factual

2    allegations was in charge of the importation and

3    distribution of the Ecstasy tablets.

4         In addition, at the time of his arrest he made

5    an admission to the agents regarding his involvement.

6         The agents also seized records from the

7    defendant that mirrored the allegations contained in the

8    complaint with regard to the distribution of the Ecstasy.

9         As to risk of flight, while the defendant has

10   presented a motion for bond to this Court, the defendant

11   is a Canadian citizen.  The defendant possesses a Canadian

12   passport, and while he has a residence in South Florida on

13   South Beach, there is no indication whatsoever that the

14   defendant has entered the United States legally to obtain

15   that residence.

16        There is no verification of any INS records

17   showing that he made a lawful permanent residency here.

18   If at best it's a temporary residency.  That's certainly

19   not his permanent address.

20        In addition, the passport that was seized from

21   the defendant at the time of his arrest lists an address

22   on Coburn (phonetic) Street in London, Ontario, Canada as

23   the address for his passport.

24        It does not list the South Beach address.

25        While he claims to have ties to South Florida,

8

1   his ties are entirely to the country of Canada.

2          With regard to his residency here, while he

3   claims he has been residing here since 1995, in 1996 the

4   defendant was stopped attempting to make an entry into the

5   United States in the Detroit, Michigan area.

6          At that time he had in his possession two

7   Florida ID's with different dates of birth.

8          He also indicated to the inspectors there that

9   he was here on -- going at that time on a shopping spree.

10  However, the possessions that he had with him were

11  inconsistent with that.

12         He was denied entry into the United States at

13  that time and turned around and sent back to London,

14  Ontario.

15         THE COURT:  When was that?

16         MR. WEINSTEIN:  In 1996, on February the 12th of

17  1996.

18         And at that time the address that he provided

19  was the Coburn Street address.

20         In his motion the defendant claims that he's

21  been residing in South Beach since 1995, at the South

22  Beach address.

23         He lists no permanent source of employment and

24  income other than an inheritance that he obtained from his

25  parents at the time of their death.

9

1          He also claims to be in the clothing business.

2          While he may have witnesses to present alleging

3   ties to South Florida, none of those witnesses are

4   American citizens.   Only one of the witnesses has a

5   residence within the Southern District of Florida.

6          In addition, during the conversations that the

7   defendant had with the cooperating witness, he indicated

8   that he ran a turnkey operation that allowed him to have

9   easy access to additional funds that are available.

10          It's the position of the United States, based on

11   the presumption that attaches to this indicted case, the

12   fact that he's looking at a fairly substantial amount of

13   time in jail, the fact that he has no ties to the Southern

14   District of Florida, and that he is a Canadian citizen,

15   there are no conditions that this Court could set that

16   could guaranty and assure his appearance here, nor that

17   would guaranty the fact that the defendant could still

18   continue to run his importation and distribution of

19   Ecstasy with regard to the tablets that he has already

20   imported up to this date.

21          THE COURT:   Okay.

22          All right, let me hear from the defense.

23          MR. SREBNICK:   Good morning, Your Honor.

24          Mr. Matetich is a Canadian citizen.   He does

25   have a Canadian address; that's where he grew up.

10

1        However, he has had a residence here in Miami

2    Beach for the last five years.  It's set forth in our

3    pleading, together with the proof of his residency.

4        He's paid rent, has a phone bill.  He has an

5    electric bill.  He's had a residence here in South

6    Florida.

7        While it's not a permanent address, and he's not

8    a permanent resident of the United States, he does have a

9    place that he lives here in Miami when he's living in

10   Miami.

11       THE COURT:  Does he maintain a residence in

12   Ontario as well?

13       MR. SREBNICK:  That's where he's from.  Yes, so

14   -- he has an aunt who lives in Ontario, an 80-year-old

15   aunt.

16       He's an orphan.  Both of his parents are

17   deceased.  But his aunt, who I've spoken to, who's 80

18   years old, lives in Ontario and that's who he visits, and

19   that's his only real family member at this point in his

20   life, given the death of his parents and he has no living

21   siblings.

22       THE COURT:  Is that where he lives when he's in

23   Ontario?

24       MR. SREBNICK:  Yeah.  He lives in -- when he

25   lives in Ontario, that's who he lives with his, aunt.

12

1    He is a graduate of the University of Western

2    Ontario from Canada.  He's attended the London School of

3    Economics.

4        And let me just start by saying we are not here

5    to debate the strength of the government's case, other

6    than to say that the one person with whom the government

7    alleges he was involved with the importation of these

8    pills, Greg Collins, his codefendant -- and it's the only

9    episode that Mr. Matetich has been involved in according

10   to the government's own evidence with regard to

11   importation into the United States -- that person, who

12   became a cooperating witness -- was released on a

13   stipulated bond of $100,000 personal surety, together with

14   that person's sister, another defendant in this case.

15       So the two other defendants in this case have

16   been released on a personal surety bond of $100,000.

17       So let's start there.

18       THE COURT:  Are they U.S. citizens?

19       MR. SREBNICK:  They are.  There's no question

20   that as a result of that they have a stronger case for

21   bond, but just in terms of the strength of the evidence,

22   the case -- they caught those two cold and agreed on a

23   bond for them.

24       What I'd like to point out, however, is although

25   Mr. Matetich is an orphan, doesn't have direct family

1    members, he does have very close friends who have come to

2    court today -- three from Canada have flown in and that's

3    why we had postponed this.

4         And I'd like to introduce those people to Your

5    Honor right now.

6         Let me start with Randy Sweers (phonetic).  And

7    I'm going to tell you a little bit more about him in a

8    second.  He lives in South Florida.  He has a business

9    here in South Florida.  He's the first person that I

10   listed in our motion for bond, Judge.

11        THE COURT:  Umm-hmm.

12        MR. SREBNICK:  He is going to be the person with

13   the financial means to collateralize a bond that Your

14   Honor might set in this case.

15        I'd like to introduce Marie Ange Caravano

16   (phonetic).

17        I'd like to introduce Demetra Capples

18   (phonetic).

19        I'd like to introduce John Wood.

20        And I'd like to introduce Martine Lanu.

21        We have four -- I said three.  Four people from

22   -- three Canada.  Marie Ange is a French national who

23   works for CNN here in South Florida.

24        All of those persons have known Charlie for

25   years.  Some of them went to school with Charlie.

13

1         And I call him Charlie, Your Honor, that's his

2    middle name.

3         Mr. Matetich is Maximillian Charles Matetich.

4    He's known as Charlie.

5         They've known him for years.

6         And I don't need to waste the Court's time; the

7    Court has had an opportunity to look at our motion.

8         Each of these persons is a substantial

9    individual.  College graduates.

10        Marie Ange has a graduate degree in journalism.

11        Ms. Capples is an investment banker with Bay

12   Street Direct, Inc.

13        John Wood works for an internet company called

14   UU Net (phonetic), a division of Worldcom.

15        These are real people who went to universities,

16   they are people of substance, all of whom have come to

17   Miami, at great expense to themselves, to tell Your Honor

18   that they trust Charlie, they know that even if Charlie

19   made a mistake and did something wrong, he will honor his

20   promise to Your Honor to be in court whenever he needs to

21   be in court.

22        I'd like to speak about Randy Sweers for a

23   moment, and I don't know if Your Honor wants to have me

24   present him as a witness, or if you'd like me to proffer,

25   and then he'd be available for cross-examination in the

1    event that Mr. Weinstein would like to cross examine.

2                    THE COURT:  Yeah, why don't you proffer, if you

3    would.

4                    MR. SREBNICK:  Randy Sweers is also from Canada,

5    although he has relocated to South Florida.  He graduated

6    high school here in South Florida, Pompano Beach High

7    School.  He has a bachelors from Wilfred Lar University, a

8    graduate business school attendee.

9                    He was a member of the Canadian Junior Olympic

10   basketball team in Canada.  Relocated to South Florida,

11   was working as a salesman, started as a salesman for

12   Champion Marine up in North Miami, and started his own

13   business in 1994, where he is the president, 100 percent

14   owner of a company in Fort Lauderdale called Florida Power

15   Boat Brokerage, Inc.  You can find it on the internet if

16   you're interested, Your Honor.

17                   And he does a very good business here in South

18   Florida.  He has sales of three million dollars a year.

19   He has inventory -- over half a million dollars equity in

20   his inventory, and he is telling Your Honor he's known

21   Charlie for 25 years, and while he has nothing to do with

22   the allegations in this indictment, he knows that Charlie

23   will keep his promise to come to court if Your Honor sets

24   a bond.

25                   He's so confident of it, Your Honor, he's

15

1  willing to sign his name on the bond, both in his personal

2  and in his corporate capacity.

3      He would lose his home which he owns at 5870

4  Northeast 22nd Avenue.  He would lose his home, and he

5  would risk his entire business, his entire future, because

6  he knows that his friend of 25 years would not turn his

7  back on the court, and certainly would not turn his back

8  on him.

9      I've also discussed with Mr. Sweers the general

10 allegation people make, well, maybe the defendant will pay

11 him under the table and all of this business.

12     Randy Sweers says point blank, it's not going to

13 happen.  Number one, he would never do that, but, number

14 two, he knows the personal finances of Mr. Matetich.  Mr.

15 Matetich simply doesn't have the ability to make those

16 payments.

17     While the government is going to allege he's

18 been in the Ecstasy business and blah, blah, the fact is,

19 even the government's own evidence establishes a very

20 small amount of income that Mr. Matetich was making off of

21 this.  He lives a very modest -- Mr. Matetich lives a very

22 modest lifestyle.  His apartment in South Beach, I think

23 the rent is $800 a month.  He is not a man of great means.

24     He did inherit quite a bit of money, twenty or

25 fifteen years ago when his parents died.  Unfortunately,

16

1    he was not a good investor of that money and the money is

2    gone.

3            What I tell Your Honor, based on the contacts

4    that Mr. Matetich has, the Court can set a bond, let him

5    go to his home on South Beach.  He can remain at his home

6    until the case is over.  We've got people willing to

7    guaranty his appearance in court, Judge.

8            THE COURT:  Let me ask you about Mr. Sweers,

9    does he have a business in Canada and a home in Canada as

10   well?

11           MR. SREBNICK:  Let me call Mr. Sweers up and

12   introduce him to the Court.

13           THE COURT:  Sure.

14           MR. SREBNICK:  Randy.

15           THE COURT:  Let me have him raise his right

16   hand, please.

17           RANDY SWEERS, DEFENDANT'S WITNESS, SWORN

18           THE COURT:  Did you want to ask him anything

19   first?  You don't need to go over the proffer again.

20           MR. SREBNICK:  Just if you'd introduce yourself

21   to the Court and tell him a little about your business and

22   your contacts to Canada, and your parents and all of that.

23           THE WITNESS:  My name is Randall Sweers.  I was

24   originally born in Barry, Ontario, Canada, the same city

25   where I met Charlie when I was ten years old.

17

1          I've known Charlie since he was ten.  I've been

2      in contact with on a weekly basis, a monthly basis, since

3      then.

4          I consider him a very close friend of mine.

5          THE COURT:  Do you actually live in Miami or do

6      you live in Canada?

7          THE WITNESS:  I live in Fort Lauderdale.

8          THE COURT:  In Fort Lauderdale?

9          THE WITNESS:  Yes.

10         THE COURT:  Full time?

11         THE WITNESS:  Full time.

12         THE COURT:  Do you have a residence in Canada?

13         THE WITNESS:  No.  I'm a permanent United States

14     resident.  I do travel back to Canada quite often, but I

15     do not have a residence in Canada.

16         THE COURT:  And where is your brokerage business

17     work out of?

18         THE WITNESS:  It's in Dania, Florida, which is

19     basically just outside of Fort Lauderdale.

20         THE COURT:  What is the address of that

21     business?

22         THE WITNESS:  3402 Southwest 26th Terrace, Suite

23     B-3, Dania, Florida 33312.

24         THE COURT:  What are your yearly sales?

25         THE WITNESS:  About three million dollars a

18

1    year.

2            THE COURT:  And what type of inventory -- I'm

3    sorry, it says "inventory/accounts receivable, 500,000."

4    What is that made up of?

5            THE WITNESS:  I own -- I spec buy a lot of --

6    it's high performance boats, and I do cigarette-type

7    boats, scarabs, things like that.  And I own a lot of

8    inventory that I purchased for resale, as well as doing

9    out and out brokerage.

10           I also own a house in Fort Lauderdale, vehicles.

11           THE COURT:  What's the value of your home?

12           THE WITNESS:  Probably between 200 and 250,000.

13           THE COURT:  And how much is the mortgage on it?

14           THE WITNESS:  About 145.

15           THE COURT:  And what type of cars do you have?

16           THE WITNESS:  I own a '97 Porsche twin turbo.  I

17   own a Harley-Davidson.  I own a Dodge truck.

18           THE COURT:  Are there notes on those?

19           THE WITNESS:  Yes, but they all have a lot of

20   equity in them.

21           THE COURT:  Does the government have any

22   questions for Mr. Sweers?

23           MR. WEINSTEIN:  Yes.

24                      CROSS-EXAMINATION

25   BY MR. WEINSTEIN:

19

1  Q    Yes, of that inventory, how many of those boats are

2  actually owned by you and the company, versus how many are

3  just inventory and are floating through, so to speak, as a

4  brokerage?

5  A    Any of the boats that I have described as being the

6  500,000, I own those free and clear.  There's no notes

7  against them.

8        I have far more inventory than the 500,000, but

9  a lot of that is on brokerage.  I probably have about

10  three or four million dollars on brokerage, but actual

11  stuff that I own, is probably about 500,000.

12  Q    You're the sole owner of that home on Northwest 22nd

13  Avenue?  Anybody else on the deed or the mortgage?

14  A    No.

15  Q    You said you were a permanent U.S. resident, when did

16  that happen?

17  A    1990, I believe.  I've lived here since 1976.  I was

18  a resident underneath my parents.  My mother is originally

19  from Canada and my father from Europe.

20  Q    You retain Canadian citizenship as well, dual

21  residency?

22  A    I do -- no, not dual residency, but I am still a

23  Canadian citizen, but a legal U.S. resident.

24  Q    And your taxes, you pay Canadian taxes or United

25  States taxes?

20

1    A    United States taxes.

2              MR. WEINSTEIN:  Nothing else, Your Honor.

3              THE COURT:  Thank you.

4              All right, thank you, Mr. Sweers.

5         Mr. Srebnick, how come Mr. Maletich has no

6    witnesses here who live in the United States -- I mean,

7    who are United States citizens, or live in the United

8    States, other than Mr. Sweers?  He's been here for six

9    years?

10             MR. SREBNICK:  Well, the answer to that is,

11   people that are -- his girlfriend, who is here in court

12   today, she's not a U.S. citizen, but she is his

13   girlfriend.

14             THE COURT:  Who is that, which woman is that?

15             MR. SREBNICK:  Marie Ange Caravano.  She's

16   worked as an intern for CNN.  They've been friends for

17   four years.

18             She just stood.

19             I have spoken, for example, with his landlord.

20   I spoke with the people at his building, but these are

21   just people who know him in that context, and I didn't

22   think they would be helpful in terms of a bail issue.  I

23   thought what would be most helpful are the people that

24   have known him for a long period of time.  And I called

25   the people that know him, rather than the people that see

21

1    him.

2            THE COURT:  Right.

3            MR. SREBNICK:  There's no debate, based on the

4    documents that I've tendered to the Court, that he's had

5    the residence.  His landlord confirmed that he's been

6    paying rent for five years.  Southern Bell confirms it.

7    Florida Power & Light confirms it.  His girlfriend

8    confirms it.  Randy Sweers confirms it.

9            The other folks from Canada who come down here

10   and visit with him, who have lived in his apartment, and

11   who are staying there right now while Mr. Matetich is in

12   custody, waiting to find out if he has bail, they've all

13   confirmed this is where his residence is in South Florida.

14           I don't dispute that he has family in Canada,

15   and I don't even dispute that he has a business that sells

16   handbags and leather goods in Europe.  But the issue is

17   can the Court fashion a bond and say to Mr. Matetich, Mr.

18   Matelich, you stay at your home on South Beach pending the

19   resolution of this case.  Mr. Sweers, you can lose a half

20   a million dollars in inventory by signing on the bond, not

21   to mention your personal home.  Will that keep Charlie

22   here in Miami or West Palm, wherever the court is, pending

23   the resolution of this case.

24           I submit to the Court, given the other bonds set

25   in this case by stipulation, given other bonds that I've

22

1    seen in this courthouse, where Ecstasy cases by Canadian

2    nationals have gotten bond, I think this is a case, given

3    the quality of Mr. Sweers' guaranty, where the Court can

4    set a bond, put Mr. Sweers on the hook -- and anybody else

5    the Court feels would be appropriate.  And what more can

6    someone do who's not a U.S. citizen to get a bond in a

7    case?

8         There's no mandatory minimum in this case.  And

9    while there certainly a presumption based on the statutory

10   maximum, we don't even know what the weight of the

11   substances are yet.  And whatever the predictions are of

12   the government, there is no mandatory minimum.

13        I think that given all of those factors the

14   Court can fashion a bond.  If it requires a curfew, if

15   worst case scenario the Court says put an electronic

16   bracelet, stay in your home on South Beach, we can do

17   that, too.

18        Whatever the Court says.

19        That's all I have to say, Your Honor.

20        THE COURT:  Mr. Weinstein.

21        MR. WEINSTEIN:  Your Honor, a couple of things.

22        In addition to the Miami address, at the time of

23   his arrest he also gave an address in Barcelona, Spain.

24   So the defendant has multiple residences in multiple

25   countries throughout, not just North America, but we're

23

1   talking about throughout the entire world with the Spanish

2   address.

3           In addition to that, the defendant claims that

4   he doesn't have a significant income from the Ecstasy

5   business.  Just based on a review of the documents at the

6   time of his arrest, he had accounts receivable due to him

7   in the Ecstasy business for approximately $160,000, and

8   that was just concerning two of the deals that were

9   pending, one of which did not involve the cooperating

10  witness.

11          In addition, the passport that was seized from

12  the defendant at the time of his arrest was a passport

13  that replaced one that was reported lost in Copenhagen.

14  And it also shows extensive travel throughout Europe as

15  well as in and out of the United States from 1997, '98,

16  '99 and 2000.

17          For an individual that claims to have a

18  residence in South Beach that he's had for the last five

19  years, he doesn't spend a lot of time there.  The passport

20  reflects travel in and out of the United States,

21  extensively, without residing in the South Florida

22  address.

23          The defendant also, by his own admission, and by

24  his own submission, he shows no lawful entry into the

25  United States on either a tourist visa on a permanent

24

1    resident application, on a work visa, yet he claims to own

2    a residence down here and is now claiming to be in that

3    residence.  And at the time that he claimed to have that

4    residence was when he made that entry, or attempted to

5    make the entry, into Detroit, Michigan from London,

6    Ontario where he was turned around and sent back into

7    London, Ontario because he possessed two Florida ID cards

8    with different dates of birth on them.

9          Your Honor, this defendant presents a

10   substantial risk of flight.  He has worldwide ties.  He

11   has accounts receivable to him in his Ecstasy business

12   that are not money that's on the books.

13         As for the individuals that are willing to put

14   up their property and willing to vouch for him, he

15   presents no one who is a United States citizen.

16         Mr. Sweers is a permanent resident of the United

17   States, and he's willing to sign some property up there,

18   but I would suggest that's not going to be enough at this

19   point to guaranty the defendant's appearance and also his

20   inability to continue to conduct his Ecstasy business.

21         I think that based on the presumptions and based

22   upon the evidence that's been presented to Your Honor at

23   this point that the government has met their burden, and

24   there are sufficient facts that you can find that would

25   substantiate an order of pretrial detention as to the

25

1    defendant, both on risk of flight and danger.

2             As to the quantity of the drug, we're dealing

3    with a minimum of 50,000 pills, and these are pills that

4    there are -- at this point the legislature has not

5    established a minimum mandatory, however, by conversion,

6    again, he's looking at 78 to 97 months; that's at a base

7    level, without enhancement for organizer. And that's

8    where he begins.

9             As to the fact that a bond has been set as to

10   two other codefendants, both of those codefendants are

11   United States citizens, and there were additional facts

12   considered by the Assistant United States Attorney at the

13   time they stipulated to a bond with regard to those

14   defendants.

15            That should not be an overriding factor showing

16   that this defendant is not a risk of flight or a danger to

17   the community.

18            THE COURT: As far as danger to the community,

19   are you basing that on his distribution of drugs, or is

20   there any evidence that he is of a violent nature?

21            MR. WEINSTEIN: Based upon the statutory

22   presumption and his distribution of drugs.

23            This is a controlled substance that's relatively

24   new. There are studies on both sides that deal with the

25   fact that this is a dangerous substance, and that when it

26

1    is abused it can result, and has resulted, in death and
2    serious bodily harm.
3        There is no mandatory minimum that's been
4    established by Congress, or the Senate, with regard to
5    this particular controlled substance as they've done with
6    cocaine and also with marijuana.
7        However, it is scheduled as a dangerous
8    controlled substance and the presumption applies since the
9    maximum penalty is greater than ten years.
10        THE COURT:  How would this gentleman support
11    himself, Mr. Srebnick, if he was released on a bond?
12        MR. SREBNICK:  I know that his -- I spoke to his
13    friends about that because, as a Canadian citizen, just to
14    make sure we're clear -- Canadians don't need to go to INS
15    and get visas and all of this.  A Canadian can just come
16    into the United States.  He does not have work papers here
17    in the United States to work.  He was working in the
18    handbag business in Barcelona, and we don't deny it.  His
19    passport shows it.  He disclosed that to the government
20    and to the Pretrial Services office.
21        The answer to your question is, I've spoken to
22    his friends.  His rent is going to be paid for either by
23    Mr. Swoers or one of his other colleagues.  I spoke to his
24    aunt in Canada.  These people have the ability to make
25    sure he has all of his bills paid for during the pendency

27

1    of this case.

2              MR. WEINSTEIN:  Your Honor, just one -- with

3    regard to that comment -- Canadian citizens are entitled

4    to enter the United States to visit and to vacation.

5    However, if they intend to make permanent residence in the

6    United States, they're obligated, as any other foreign

7    national, to notify INS and make an application.  He can't

8    just come here and live here and say he's a Canadian

9    citizen.  They ask when they cross the border what the

10   purpose of their visit here is.

11             INS has no record of this defendant making a

12   lawful entry one way or the other with regard to his entry

13   into the U.S. to permanently -- what appears to be a

14   permanent residence in South Beach according to his own

15   testimony.

16             MR. SREBNICK:  May I clarify?  He doesn't own

17   the residence, he rents it.

18             THE COURT:  I realize that.  Okay.

19             MR. SREBNICK:  So we're clear.

20             THE COURT:  And I think the defendant could

21   enter the county without it necessarily being recorded,

22   coming in from Canada, but, yeah, I think the government's

23   point is well taken, that he's--if he was going to

24   establish a permanent residence here, then I think there

25   would be certain notifications that would need to be made

28

1      to the immigration service.

2              MR. SREBNICK:  I agree.  We're not claiming he's

3      a de facto permanent resident of the United States, or

4      that he's filing for those papers.  All I'm saying is he

5      has a residence that has been consistent, and while he

6      doesn't stay here for the statutory period of six months

7      to establish residency, he does have a place to live which

8      has been available for five years.

9              THE COURT:  Okay.

10             I find that this offense carries a penalty in

11     excess of ten years and the presumption arises as to risk

12     of flight and danger to the community.

13             I find that the defendant has overcome that

14     presumption, and I'm going to set a bond in this matter.

15             I'm going to set a 100,000 corporate surety

16     bond, to be signed by the defendant, the defendant's -- is

17     it girlfriend or fiancé?

18             MR. SREBNICK:  Yes.  Marie Ange Caravano.

19             THE COURT:  Okay.

20             And by Mr. Sweers.

21             In addition, I'm going to -- I said 100,000

22     corporate surety bond, correct?

23             In addition, I'm going to impose a 500,000

24     personal surety bond to be signed by the defendant, the

25     defendant's fiancé, and Mr. Sweers.

29

1    I'm going to impose a Nebbia condition on the

2    bond.

3    I'm going to require the defendant to surrender

4    all passport and travel documents to the Pretrial Services

5    office, that the defendant sign a waiver of extradition

6    from Canada to the United States, that the defendant

7    report to Pretrial Services two times a week by phone and

8    one time a week in person, that the defendant remain --

9    As far as travel restrictions, Mr. Weinstein,

10    what would you request, make it Dade County or the entire

11    Southern District?

12    MR. WEINSTEIN:  In light of the fact he's going

13    to have to make an appearance in Fort Lauderdale --

14    THE COURT:  That's right, he's going to be in

15    Palm Beach.

16    MR. WEINSTEIN:  -- and/or Palm Beach, it should

17    be the Southern District of Florida.

18    THE COURT:  Okay.

19    His travel is restricted to the Southern

20    District of Florida.

21    I'm going to order that Mr. Sweers, or any of

22    the signatories to the bond, with the exception of Mr.

23    Sweers' inventory -- since he's in the business of selling

24    boats, I don't want to prevent him from selling boats that

25    he owns -- but as far as any other assets he has, such as

Aug-22-00 03:02P

30

1    his automobiles and his residence, or anything else that,

2    any other asset that he owns, he's not to sell, pledge,

3    mortgage, hypothecate or in any other way encumber any

4    property that he owns, real or personal, until such time

5    as the bond is discharged or otherwise modified by order

6    of the Court.

7            Mr. Sweers, do you understand that?

8            THE WITNESS:  Yes, sir, I do.

9            THE COURT:  Okay.  Could you come up for a

10   moment?

11           You understand that in posting this bond, if the

12   defendant does not abide by all of the conditions of the

13   bond, which include him appearing in court and other

14   things, that the bond could be forfeited and that the

15   government could come to you to collect $500,000 on the

16   personal surety bond, and a bondsman $100,000 on the

17   corporate surety bond?

18           THE WITNESS:  Yes, I do.

19           THE COURT:  So you would be out $600,000 if Mr.

20   Maletich does not show up at court.

21           THE WITNESS:  That's correct.

22           THE COURT:  You're willing to take that risk?

23           THE WITNESS:  Yes, I am.

24           THE COURT:  Okay.  You also understand that I've

25   ordered that you not be permitted to encumber in any way

31

1    any property that you own, other than the inventory of

2    boats that you own, since you're in the business of buying

3    and selling boats?

4              THE WITNESS:  Correct.

5              THE COURT:  You understand that?

6              THE WITNESS:  Yes.

7              THE COURT:  And if you were to violate any of

8    those conditions of the bond, you as well could be held in

9    contempt of court and perhaps charged with a felony.

10             THE WITNESS:  I understand.

11             THE COURT:  Okay.  All right, thank you, Mr.

12   Sweers.

13             MR. SREBNICK:  Judge, may I make one request:

14   Rather than paying the bondsman fee, can we deposit that

15   money, or even a little more money, into the registry of

16   the Court, so as not to put Mr. Sweers out financially?

17             THE COURT:  Yeah, I understand that, but I

18   prefer to have a bondsman involved in this matter if Mr.

19   Sweers should become a fugitive.

20             MR. SREBNICK:  Mr. Matetich.

21             THE COURT:  Mr. Matetich.

22             Mr. Sweers, you can go anywhere you want.

23             If Mr. Matetich should become a fugitive.  I

24   just would not be comfortable with a percentage bond.  I

25   understand -- generally I don't like imposing corporate

32

1    surety bonds because it takes money that might be needed

2    for other things away from the defendant, but in this

3    instance, I'm going to require it.

4            I'm also going to impose a curfew on the

5    defendant from 9:00 p.m. in the evening until 7:00 a.m. in

6    the morning.

7            Mr. Maletich, you understand that means you have

8    to be in your residence in Miami Beach during that time

9    period?

10            THE DEFENDANT:  I do, Your Honor.

11            THE COURT:  From 9:00 p.m. until 7:00 a.m.  And

12    if you're not there -- Pretrial Services will be checking

13    on it -- if you're not there -- you'll immediately be

14    remanded to jail.

15            You understand that?  Okay.

16            Could I speak to his girlfriend as well.

17            MR. SREBNICK:  Marie Ange.

18            THE COURT:  Tell me your name, please.

19            MS. CARAVANO:  Marie Ange Caravano.

20            THE COURT:  Ma'am, I've ordered that you sign a

21    bond that would guaranty the appearance of your boyfriend

22    here in court for all future proceedings.  The total

23    amount of the bond is $600,000.

24            Although you may not have that kind of money,

25    the government could come against you and take away any

33

1   assets that you do own in order to meet that bond should

2   your fiancé not show up at court.

3          Do you understand that?

4          MS. CARAVANO: Yes, I do.

5          THE COURT: I've also required that Mr. Matetich

6   have a curfew from 9:00 p.m. in the evening to 7:00 a.m.

7   Are you going to be residing with Mr. Matetich?

8          MS. CARAVANO: Yes, I will.

9          THE COURT: Okay. I'm going to require that if

10  Mr. Matetich is not in your residence from 9:00 p.m. to

11  7:00 a.m. and you're aware of that, that you're to report

12  that to Pretrial Services immediately.

13         MS. CARAVANO: Okay.

14         THE COURT: You understand that?

15         MS. CARAVANO: Yes, I do.

16         THE COURT: Okay. This is the Court that's

17  ordering you to do that so if you fail to do that you

18  could be held responsible, either by contempt of court or

19  the United States government could charge you with a

20  contempt indictment. So do you understand that?

21         MS. CARAVANO: Yes, I do.

22         THE COURT: So it's important that you let the

23  Court know, through Pretrial Services, if Mr. Matetich is

24  not complying with any condition of the bond.

25         MS. CARAVANO: I understand.

Aug-22-00 03:04P

34

1          THE COURT:  Okay.

2          Will Pretrial Services make sure this young lady

3     has the phone number to call?

4          MR. SREBNICK:  I'll take care of it, Your Honor.

5          THE COURT:  All right, thank you.

6          MS. CARAVANO:  Thank you.

7          THE COURT:  All right, thank you very much.

8          MR. WEINSTEIN:  Your Honor, a couple of other

9     additional matters.

10         THE COURT:  I wanted to ask the government if

11    they would like Mr. Matetich to wear an ankle bracelet?

12         MR. WEINSTEIN:  Yes, Your Honor.

13         THE COURT:  Okay.  I'm also going to require,

14    then, that he submit to electronic monitoring, at his own

15    expense.

16         Let me ask Pretrial Services, if he's being

17    electronically monitored, does it still make sense for him

18    to call you all, or no?

19         PTS OFFICER:  Yes.

20         THE COURT:  He should still -- but not report,

21    is that correct?

22         PTS OFFICER:  He could report in person.  It will

23    be a set date that the officer will have him come in.

24         THE COURT:  Okay.  Do you prefer that, or  when

25    you have an electronic bracelet, do you prefer that he

Aug-22-00 03:04P

35

1   report as well, or not?

2          PTS OFFICER:  We prefer that he does report,

3   yes, as well.

4          THE COURT:  Okay.  All right, so I'm going to

5   keep that.

6          I'm also going to require that he submit to

7   random drug testing as prescribed by the Pretrial Services

8   Office.

9          Anything else?  I'm sorry, Mr. Weinstein.

10          MR. WEINSTEIN:  He should stay away from

11   airports, seaports --

12          THE COURT:  Okay.

13          MR. WEINSTEIN:  -- bus stations, any modes of

14   public transportation, other than transportation on and

15   off Miami Beach, obviously, but --

16          THE COURT:  Right.

17          You're to avoid all commercial transportation

18   facilities, which means no airports, no marinas and no bus

19   terminals.

20          Do you understand, sir?  Okay.

21          If you need to take a local bus, you can do

22   that, but no -- I mean, I don't know how you -- I assume

23   you have a car.  If you need to take a bus to go to

24   Pretrial Services, a local bus would be okay, anything

25   that travels interstate would not.

36

1      Yes, sir.

2          MR. WEINSTEIN:  Do you require him to seek

3      employment, or attempt to seek employment during the --

4          THE COURT:  I don't know how he's going to do

5      that if he's not -- I don't know if he'd be permitted to

6      do that, so I'm not going to require that.

7          I mean, the government believes he's here

8      illegally.  You could move immigration to have him

9      detained, but that's up to you.

10         MR. WEINSTEIN:  The other matter, I believe, is

11     that immigration is going to be lodging a -- at least a

12     48-hour detainer against the defendant to determine

13     whether or not they're going to institute any other

14     proceedings.

15         THE COURT:  They're going to -- well, that's  up

16     to you.  If INS is going to issue a detainer, then

17     obviously he's not going anywhere on the bond.

18         MR. WEINSTEIN:  And then that brings up the

19     other point: We have no other conditions that we're asking

20     you to impose at this time, however, we would request  a

21     stay in order to seek a review of the Court's ruling in

22     front of Judge Hurley.

23         THE COURT:  Okay.  I'll give you until -- how

24     much time do you need for that?

25         MR. WEINSTEIN:  Till 5:00 p.m. today.

37

1          THE COURT:  Okay.  Well, when are you going to

2    make this Nebbia?  When are you going to get the bone

3    together, Mr. Srebnick?

4          MR. SREBNICK:  It will probably be till Monday

5    before we could get all the property, and I have to have

6    Mr. Sweers' home probably encumbered by the corporate

7    surety bond.

8          THE COURT:  Okay.  Well, I'm going to stay the

9    bond until Monday at noon.  That way, if Immigration is

10   going to impose a detainer, that could be done by then as

11   well.  If not, Mr. Matelich will be free to go at that

12   time.

13          MR. SREBNICK:  Thank you, Judge.

14          THE COURT:  Okay.  Anything further on this

15   case, Mr. Weinstein?

16          MR. SREBNICK:  That's all we have.

17          MR. WEINSTEIN:  No, Your Honor, other than that

18   if Mr. Srebnick has the paperwork together he can submit

19   that to --

20          THE COURT:  The paperwork on?

21          MR. WEINSTEIN:  The Nebbia requirement.  If he

22   wants to --

23          THE COURT:  Okay, yeah.  If you all will meet on

24   the Nebbia and then let me know if you -- I want to see

25   the paperwork as well.  If you all agree to the Nebbia

Aug-22-00 03:05P

38

1    then let me know.

2              I understand that, Mr. Weinstein, the government

3    -- you may agree to the Nebbia without imposing any kind

4    of--

5              MR. WEINSTEIN:  No, my point was that we would

6    have reviewed it before we came to present it to Your

7    Honor.

8              MR. SREBNICK:  Sure.

9              THE COURT:  Right.  Okay.

10             You don't waive your right of appeal by agreeing

11   to the Nebbia is what I want to make clear.

12             MR. WEINSTEIN:  Thank you, Your Honor.

13             THE COURT:  All right, thanks a lot everybody.

14       (Whereupon the hearing was concluded.)

15                       - - - - -

16             I HEREBY CERTIFY that, the foregoing is a

17   correct transcript from the electronic sound recording of

18   the proceedings in the above-entitled matter.

19

20

21

22                                            August 22, 2000

23   _____            _ 8-22-00

24   Transcriber                              Date

25

Accurate Reporting Services, Inc.
Third Floor
172 West Flagler Street
Miami, Florida 33130

**U.S. Department of Justice**

*United States Attorney*
*Southern District of Florida*

---

*500 Australian Ave., Ste. 400*
*West Palm Beach, Florida 33401*
*(561)820-8711*

DATE    8-24-00

### FACSIMILE TRANSMISSION

UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA
500 AUSTRALIAN AVE., STE. 400
WEST PALM BEACH, FLORIDA 33401
FAX #: (561) 659-4526

TO:    Andre Jordan Zemorano, Esq.

FAX#  (305) 371-6545            PHONE

FROM:    Nancy Vorpe Quinlan
ASSISTANT UNITED STATES ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
500 AUSTRALIAN AVE., STE. 400
WEST PALM BEACH, FLORIDA 33401

*IF YOU DO NOT RECEIVE ALL THE PAGES INDICATED OR HAVE ANY PROBLEM WITH RECEIVING, PLEASE CALL (561) 820-8711 AND ASK FOR Marlene.*

*NO. OF PAGES (INCLUDING THIS PAGE):* +3

*COMMENT:*
        *Re: Maximillian C. Matetich*

THIS FACSIMILE CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE ADDRESSEE(S) NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

08/24/00  12:05 FAX 15616594526          USAO WEST PALM                          ☑ 001

```
        **********************
        ***   TX REPORT   ***
        **********************

   TRANSMISSION OK

   TX/RX NO              3513
   CONNECTION TEL                  13053716545
   SUBADDRESS
   CONNECTION ID
   ST. TIME              08/24 11:55
   USAGE T               09'39
   PGS. SENT             43
   RESULT               OK
```

**U.S. Department of Justice**

*United States Attorney*
*Southern District of Florida*

*500 Australian Ave., Ste. 400*
*West Palm Beach, Florida 33401*
*(561) 820-8711*

DATE    8-24-00

## FACSIMILE TRANSMISSION

UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA
500 AUSTRALIAN AVE., STE. 400
WEST PALM BEACH, FLORIDA 33401
FAX #: (561) 659-4526

TO:    Andre Jordan Zemorano, Esq.

FAX#  (305) 371-6545          PHONE

FROM:    Nancy Vorpe Quinlan
    ASSISTANT UNITED STATES ATTORNEY
    UNITED STATES ATTORNEY'S OFFICE
    500 AUSTRALIAN AVE., STE. 400
    WEST PALM BEACH, FLORIDA 33401

*IF YOU DO NOT RECEIVE ALL THE PAGES INDICATED OR HAVE ANY PROBLEM WITH RECEIVING, PLEASE CALL (561) 820-8711 AND ASK FOR Marlene.*

*NO. OF PAGES (INCLUDING THIS PAGE):* 43

*COMMENT:*
    *Re: Maximillian C. Matetich*

*THIS FACSIMILE CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION*

**U.S. Department of Justice**

*United States Attorney*
*Southern District of Florida*

---

*500 Australian Ave., Ste. 400*
*West Palm Beach, Florida 33401*
*(561)820-8711*

DATE   8-23-00

### FACSIMILE TRANSMISSION

UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA
500 AUSTRALIAN AVE., STE. 400
WEST PALM BEACH, FLORIDA 33401
FAX #: (561) 659-4526

TO:      Howard Srebnick, Esq.

FAX# (305) 358-2006          PHONE

FROM:      Nancy Vorpe Quinlan
        ASSISTANT UNITED STATES ATTORNEY
        UNITED STATES ATTORNEY'S OFFICE
        500 AUSTRALIAN AVE., STE. 400
        WEST PALM BEACH, FLORIDA 33401

*IF YOU DO NOT RECEIVE ALL THE PAGES INDICATED OR HAVE ANY PROBLEM WITH RECEIVING, PLEASE CALL (561) 820-8711 AND ASK FOR Marlene.*

*NO. OF PAGES (INCLUDING THIS PAGE):* 43

*COMMENT:*

        *Government's Motion to Reopen Pretrial Detention*

        *and Motion for Nebbia Inquiry*

---

*THIS FACSIMILE CONTAINS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE ADDRESSEE(S) NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

08/23/00   17:45 FAX 15610594526        USAO WEST PALM                              ☒001

```
              |  ************************
              |  ***   TX REPORT   ***
                 ************************


      TRANSMISSION OK

      TX/RX NO              3507
      CONNECTION TEL                    13053582006
      SUBADDRESS
      CONNECTION ID
      ST. TIME             08/23 17:36
      USAGE T              09'50
      PGS. SENT               43
      RESULT                  OK
```

500 AUSTRALIAN AVE., STE. 400
WEST PALM BEACH, FLORIDA 33401
FAX #: (561) 659-4526


TO:      Howard Srebnick, Esq.


         FAX#  (305)358-2006              PHONE


FROM:        Nancy Vorpe Quinlan
         ASSISTANT UNITED STATES ATTORNEY
         UNITED STATES ATTORNEY'S OFFICE
         500 AUSTRALIAN AVE., STE. 400
         WEST PALM BEACH, FLORIDA 33401

*IF YOU DO NOT RECEIVE ALL THE PAGES INDICATED OR HAVE ANY PROBLEM WITH
RECEIVING, PLEASE CALL (561) 820-8711 AND ASK FOR Marlene.*

*NO. OF PAGES (INCLUDING THIS PAGE):*

*COMMENT:*
         *Government's Motion to Reopen Pretrial Detention*

                *and Motion for Nebbia Inquiry*


*THIS FACSIMILE CONTAINS PRIVILEGED AND
CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE ADDRESSEE(S) NAMED ABOVE.  IF YOU ARE NOT THE
INTENDED RECIPIENT OF THIS FACSIMILE, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED
RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
FACSIMILE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.  THANK YOU.*

Exhibit "C"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 96-7009

IN THE MATTER OF THE EXTRADITION )
                                 )   MISC NO._____
            OF                   )
                                 )        MAGISTRATE JUDGE
WOLFGANG OEHME                   )            SNOW
                                 )        COMPLAINT
_____)

TO: THE HONORABLE LURANA S. SNOW, UNITED STATES MAGISTRATE JUDGE

     I, Jeffrey H. Sloman, being duly sworn, depose and state that
I am an Assistant United States Attorney for the Southern District
of Florida and act for and on behalf of the Government of the
Federal Republic of Germany ("the Requesting State") pursuant to
Article 2(1) of the 1978 Extradition Treaty between the United
States and Germany (TIAS 9785) as amended by the Supplementary
Extradition Treaty of October 21, 1986 entered into force on March
11, 1993 ("the Treaty") with respect to WOLFGANG OEHME.

     In accordance with Title 18, United States Code, Section 3184,
I charge, on information and belief, as follows:

     1.   WOLFGANG OEHME is duly and legally charged with having
committed, in the jurisdiction of the Requesting State, the crime
of fraud pursuant to §§ 263 Section 1, 25 Section 2, an 53 Section
1 of the German Penal Code.   Under Article 2 and item 13 of the
list of offenses which comprise the Appendix of the Treaty, this
crime is an extraditable offense.

     2.   WOLFGANG OEHME is the subject of an arrest warrant (file
number ER IV 4826/95) issued on July 3, 1995, by judicial
authorities in Munich, Germany.

3.    According to an investigation by authorities of the Requesting State, on November 4, 1991, WOLFGANG OEHME established a company known as Pegasus Investment Consulting Corporation ("Pegasus") on behalf of Alexander Herrmann.  In the period between June 1992 and March 1993, Pegasus used various agents in Germany to offer loans.  The amount of the loan was entirely within the client's discretion.  The term was to be 10 years and 1 day, with an interest rate of 4.5% p.a.  The loans were granted on condition that a deposit of 1.5% of the loan amount was paid in advance.  A portion of the loan amount was to be reinvested through ICI Holding, Miami, Florida, another company established by WOLFGANG OEHME.  This investment was supposed to generate enough profit by the end of the loan period to cover all interest and redemption payments, so that an interest-free and redemption-free loan was promised.

As premeditated by WOLFGANG OEHME, Alexander Herrmann, Klaus Lauterbach and Markus Effland, no loans were paid out, no loan money was invested by ICI Holding and only a small amount of the deposits were repaid.  Deposit monies were shared out among WOLFGANG OEHME, Alexander Herrmann, Klaus Lauterbach and Markus Effland, in unknown proportions.  Between June 1992 and March 1993, a minimum of 129 clients paid to Pegasus total deposits of 7,959,120 Deutschmarks, 2,456,325 US-Dollars, 2,100,000 Belgian Francs and 56,000 Swiss Francs.  Payments were made partly in cash, handed to agents who then transmitted the money into accounts with the right of disposal vested in Herrmann, some of the monies were

2

given to Herrmann in cash, while other monies were remitted directly to other accounts.

4.    WOLFGANG OEHME is currently believed to be working at 1700 E. Las Olas Boulevard, Suite 205, Fort Lauderdale, Florida.

5.    That said WOLFGANG OEHME is a citizen of Germany, was born in Neuss, Germany, on April 6, 1956, and is a white male.

6.    The likelihood of flight is substantial if the fugitive learns of the request prior to arrest.

WHEREUPON, your complainant requests:

a.    that a warrant be issued pursuant to Title 18, United States Code, Section 3184, for the arrest of WOLFGANG OEHME;

b.    that WOLFGANG OEHME be brought before this Court and the evidence of criminality be heard;

c.    that if, on such hearing, this Court deems the evidence sufficient under the provisions of the Treaty to sustain the charges, the Court certify the same to the Secretary of State in order that a warrant may be issued for the surrender of said WOLFGANG OEHME to the appropriate authorities of the Federal Republic of Germany, according to the Treaty; and

d.    that this Court take such other actions as may be required under the provisions of the Treaty and the laws of the United States to meet the obligations of the United States under the Treaty, including the seizure of any items or materials in the possession of WOLFGANG OEHME at the time of the apprehension which are related to the crimes charged or which may be used as evidence,

3

pursuant to Article 25(1).

DATED at Fort Lauderdale, Florida, this 29th day of August,
1996.

Respectfully submitted,

WILLIAM A. KEEFER
UNITED STATES ATTORNEY

JEFFREY N. SLOMAN
ASSISTANT UNITED STATES ATTORNEY

Sworn to before me this 29th day of August, 1996

AND A WARRANT SHALL SO ISSUE.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Certified to be a true and
correct copy of the original.
Carlos Juenke, Clerk
U.S. District Court
Southern District of Florida
By _____
Deputy Clerk
Date 8/29/96

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF THE TREASURY<br>UNITED STATES CUSTOMS SERVICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N | 1. TECS ACCESS CODE 3 |
|---|---|
| | 2. PAGE   1 |
| | 3. CASE NUMBER WP02PT93WP0005 |

4. TITLE: ALEXANDER HERRMANN ET AL.

5. CASE STATUS:   INTERIM RPT

| 6. REPORT DATE<br>111296 | 7. DATE ASSIGNED<br>060293 | 8. CLASS | 9. PROGRAM CODE<br>200 | 10. REPORT NO.<br>054 |
|---|---|---|---|---|

11. RELATED CASE NUMBERS:

12. COLLATERAL REQ:

13. TYPE OF REPORT:
   OTHER

TOPIC: WOLFGANG OEHME WAIVED EXTRADITION TO GERMANY.

14. SYNOPSIS:
The following investigation pertains to Alexander HERRMANN,
Wolfgang OEHME, Marcus EFFLAND, Klaus LAUTERBACH and others for
their participation in an international money laundering and fraud
scheme.  The aforementioned individuals received funds from one
hundred and twenty five "customers" through misconception and false
pretenses.  The funds were then transferred to the United States
contrary to law.

The following report pertains to OEHME waiving extradition to the
Federal Republic of Germany in United States District Court,
Southern District of Florida.  The details of OEHME's extradition
hearing are contained herein.

| 15. DISTRIBUTION:<br>RACWP SACMI | 16. SIGNATURE:<br>   PUFF<br>   WILLIAM   J   SPECIAL AGENT |
|---|---|
| | 17. APPROVED:<br>   ODEN   MARK   F   OI GRP SUPERVISOR |
| | 18. ORIGIN OFFICE: WP<br>   W PALM BEACH - RAC | 19. TELEPHONE: 561 659 4606 |
| | 20. TYPIST: PUFF |

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

```
  ┌─────────────────────────────────────────┬─────────────────────────────────────┐
  │  R E P O R T   O F   I N V E S T I G A T I O N │ 2. CASE NUMBER WP02PT93WP0005       │
  │            C O N T I N U A T I O N        ├─────────────────────────────────────┤
  │                                           │ 3. REPORT NUMBER: 054               │
  └─────────────────────────────────────────┴─────────────────────────────────────┘
```

DETAILS OF INVESTIGATION

The following investigation pertains to Alexander HERRMANN,
Wolfgang OEHME (aka Thomas WOOD) and others, for their
participation in an international money laundering and fraud
scheme.

On September 13, 1996, OEHME was arrested in Boca Raton, Florida,
on a warrant of arrest issued in the Southern District of Florida.
The warrant of arrest was issued pursuant to a request from the
Federal Republic of Germany for OEHME's participation in a 5.8
million dollar international fraud perpetrated in Germany.

On November 7, 1996, OEHME waived extradition to Germany in United
States District Court, Southern District of Florida, in Fort
Lauderdale, Florida.  OEHME waived extradition before Magistrate
Judge Lurana Snow.

                    O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

111296                          TECS II - LIST OF RELATED RECORDS                    PAGE    1
                                                                                    TN007051
                                  2 RECORDS ARE RELATED TO BASE RECORD
   WP02PT93WP0005         ROI  CWP PUFF              W 111296


   P93214995000CWP          GEHME           WOLFGANG      W M 040656
          SV  SERIOUS VIOLATOR FROM S/A/S (CF-151)                  SUB-SOURCE


   WP02PT93WP0005         CASE CWP PUFF              W 060293
          ALEXANDER HERRMANN ET AL.


OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF THE TREASURY UNITED STATES CUSTOMS SERVICE <br> R E P O R T   O F   I N V E S T I G A T I O N | 1. TECS ACCESS CODE 3 |
|---|---|
| | 2. PAGE    1 |
| | 3. CASE NUMBER WP02PT93WP0005 |

4. TITLE: ALEXANDER HERRMANN ET AL.

5. CASE STATUS:    INTERIM RPT

| 6. REPORT DATE | 7. DATE ASSIGNED | 8. CLASS | 9. PROGRAM CODE | 10. REPORT NO. |
|---|---|---|---|---|
| 102496 | 060293 | 1 | 200 | 053 |

11. RELATED CASE NUMBERS:

12. COLLATERAL REQ:

13. TYPE OF REPORT:
   INVESTIGATIVE FINDINGS /   OTHER

TOPIC: TWO SCHEDULED MEETINGS WITH RANDALL SWEERS.

14. SYNOPSIS:
The following investigation pertains to Alexander HERRMANN,
Wolfgang OEHME, Marcus EFFLAND, Klaus LAUTERBACH and others for
their participation in an international money laundering and fraud
scheme.  The aforementioned individuals received funds from one
hundred and twenty five "customers" through misconception and false
pretenses.  The funds were then transferred to the United States
contrary to law.

The following report pertains to two scheduled meetings with
Randall (Randy) SWEERS regarding the 33 foot Avance vessel seized
from OEHME.  The details regarding these meetings are contained
herein.

| 15. DISTRIBUTION: <br> RACWP SACMI | 16. SIGNATURE: PUFF | WILLIAM   W SPECIAL AGENT |
|---|---|---|
| | 17. APPROVED: ODEN | MARK   F  OI GRP SUPERVISOR |
| | 18. ORIGIN OFFICE: WP <br> W PALM BEACH - RAC | 19. TELEPHONE: 561 659 4606 |
| | | 20. TYPIST: PUFF |

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF THE TREASURY<br>UNITED STATES CUSTOMS SERVICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | 1. PAGE    2 |
|---|---|
| | 2. CASE NUMBER WP02PT93WP0005 |
| | 3. REPORT NUMBER: 053 |

DETAILS OF INVESTIGATION

The following investigation pertains to Alexander HERRMANN,
Wolfgang OEHME (aka Thomas WOOD) and others, for their
participation in an international money laundering and fraud
scheme.

On September 17, 1996, OEHME's 33 foot Avance vessel was seized at
Hideaway Yacht Sales, Inc. located at 599 South Federal Highway,
Pompano Beach, Florida.

On October 10, 1996, at approximately 10:00 a.m., Special Agent
William Puff received a telephone call from an individual
identifying himself as Randall (Randy) SWEERS and inquiring about
the seized vessel.  During the interview, SWEERS claimed that the
vessel was his.  (For details regarding this interview, refer to
Report of Investigation number 52.)  At the conclusion of the
interview, SWEERS and S/A Puff scheduled to meet to discuss this
matter further on October 17, 1996, at 10:30 a.m., at the U.S.
Customs Service office in West Palm Beach, Florida.

On October 17, 1996, S/A Puff received a telephone call from an
individual identifying himself as SWEERS.  SWEERS stated that he
was unable to meet that day.  The meeting was re-scheduled for
October 22, 1993, at 10:30 a.m.

On October 22, 1996, SWEERS failed to appear for the scheduled
interview.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

```
102496                TECS II - LIST OF RELATED RECORDS               PAGE   1
                                                                     TN007051
                   4 RECORDS ARE RELATED TO BASE RECORD
WP02PT93WP0005053    ROI  CWP PUFF          W 102496


P9321499500CWP      OEHME          WOLFGANG      W M 040656
     SV  SERIOUS VIOLATOR FROM S/A/S (CF-151)            SUB-SOURCE

P9630236300CWP      SWEERS         RANDALL     A W M 091861
     SC  SUBJECT OF CURRENT INVESTIGATION                SUB-SOURCE

X9602290900CWP      FLORIDA POWERBOAT BROKERAGE, INC.
     SC  SUBJECT OF CURRENT INVESTIGATION                SUB-SOURCE

WP02PT93WP0005      CASE CWP PUFF           W 060293
     ALEXANDER HERRMANN ET AL.
```

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF THE TREASURY | 1. TECS ACCESS CODE 3 |
|---|---|
| UNITED STATES CUSTOMS SERVICE | |
| R E P O R T   O F   I N V E S T I G A T I O N | 2. PAGE    1 |
| | 3. CASE NUMBER WP02PT93WP0005 |

4. TITLE: ALEXANDER HERRMANN ET AL.

5. CASE STATUS:    INTERIM RPT

| 6. REPORT DATE | 7. DATE ASSIGNED | 8. CLASS | 9. PROGRAM CODE | 10. REPORT NO. |
|---|---|---|---|---|
| 101696 | 060293 | 1 | 200 | 052 |

11. RELATED CASE NUMBERS:

12. COLLATERAL REQ:

13. TYPE OF REPORT:
  MEMO OF INTERVIEW     /   INVESTIGATIVE FINDINGS

TOPIC: INTERVIEW OF RANDY SWEERS ON OCTOBER 10, 1996.

14. SYNOPSIS:
The following investigation pertains to Alexander HERRMANN,
Wolfgang OEHME, Marcus EFFLAND, Klaus LAUTERBACH and others for
their participation in an international money laundering and fraud
scheme.  The aforementioned individuals received funds from one
hundred and twenty five "customers" through misconception and false
pretenses.  The funds were then transferred to the United States
contrary to law.

The following report pertains to the telephonic interview of Randy
SWEERS regarding a 33 foot Avance vessel seized from OEHME.  The
details of the interview of contained herein.

| 15. DISTRIBUTION: | | |
|---|---|---|
| RACWP SACMI | 16. SIGNATURE: PUFF          WILLIAM    J   SPECIAL AGENT | |
| | 17. APPROVED: ODEN          MARK        F  OI GRP SUPERVISOR | |
| | 18. ORIGIN OFFICE: WP W PALM BEACH - RAC | 19. TELEPHONE: 561 659 4606 |
| | 20. TYPIST: PUFF | |

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

```
--------------------------------------------------------------
| DEPARTMENT OF THE TREASURY          |1. PAGE    2            |
| UNITED STATES CUSTOMS SERVICE       |------------------------|
|                                     |2. CASE NUMBER WP02PT93WP0005 |
| R E P O R T  O F  I N V E S T I G A T I O N |---------------|
|        C O N T I N U A T I O N      |3. REPORT NUMBER: 052   |
--------------------------------------------------------------
```

DETAILS OF INVESTIGATION

The following investigation pertains to Alexander HERRMANN, Wolfgang OEHME (aka Thomas WOOD) and others, for their participation in an international money laundering and fraud scheme.

On September 17, 1996, OEHME's 33 foot Avance vessel was seized at Hideaway Yacht Sales, Inc. located at 599 South Federal Highway, Pompano Beach, Florida.

On October 10, 1996, at approximately 10:00 a.m., Special Agent William Puff received a telephone call from an individual identifying himself as Randy SWEERS and inquiring about the seized vessel. The following is a summary and not a verbatim transcript of statements made by the interested parties. SWEERS stated that the vessel was his and that OEHME was an investor in FLORIDA POWERBOAT BROKERAGE, INC. SWEERS stated that OEHME loaned him (SWEERS) money to purchase boats and he (SWEERS) has documents to prove that he received funds from OEHME and dispensed the funds to purchase boats.

Regarding the 33' Avance vessel, SWEERS stated that OEHME paid lease for storing the vessel. When S/A Puff questioned SWEERS regarding FLORIDA POWERBOAT BROKERAGE, INC., SWEERS stated that Tracey WOOD was the "secretary for a short time" and as of April 4, 1996, she had no interest in the company.

SWEERS stated that he met OEHME four to five years ago when he (SWEERS) was employed at Sunny Isles Marina. According to SWEERS, he worked for Sunny Isles Marina for approximately two years. SWEERS stated that he knew OEHME from FLORIDA POWERBOAT CLUB, INC.

At the conclusion of the interview, S/A Puff and SWEERS made arrangements to meet a later date to discuss this matter further.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE US CUSTOMS SERVICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

101696                    TECS II - LIST OF RELATED RECORDS                    PAGE    1
                                                                              TN007051
                      5 RECORDS ARE RELATED TO BASE RECORD
WP02PT93WP0005052      ROI  CWP PUFF              W 101696


P9321499500CWP        OEHME              WOLFGANG    W M 040656
        SV  SERIOUS VIOLATOR FROM S/A/S (CF-151)              SUB-SOURCE

P9609361400CWP        WOOD               TRACEY      W F 100767
        SC  SUBJECT OF CURRENT INVESTIGATION                  SUB-SOURCE

P9630236300CWP        SWEERS             RANDY       W M
        SC  SUBJECT OF CURRENT INVESTIGATION                  SUB-SOURCE

X9602290900CWP        FLORIDA POWERBOAT BROKERAGE, INC.
        SC  SUBJECT OF CURRENT INVESTIGATION                  SUB-SOURCE

WP02PT93WP0005        CASE CWP PUFF              W 060293
        ALEXANDER HERRMANN ET AL.

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

O F F I C I A L   U S E   O N L Y

```
---------------------------------------------------------------------------
| DEPARTMENT OF THE TREASURY        |1. TECS ACCESS CODE 3                 |
|     UNITED STATES CUSTOMS SERVICE |--------------------------------------|
|                                   |2. PAGE    1                          |
| R E P O R T  O F  I N V E S T I G A T I O N |----------------------------|
|                                   |3. CASE NUMBER WP02PT93WP0005         |
---------------------------------------------------------------------------
|4. TITLE: ALEXANDER HERRMANN ET AL.                                       |
---------------------------------------------------------------------------
|5. CASE STATUS:    INTERIM RPT                                            |
---------------------------------------------------------------------------
|6. REPORT DATE |7. DATE ASSIGNED |8. CLASS |9. PROGRAM CODE |10. REPORT NO.|
|   101196      |    060293       |    1    |     200        |     051      |
---------------------------------------------------------------------------
|11. RELATED CASE NUMBERS:                                                 |
---------------------------------------------------------------------------
|12. COLLATERAL REQ:                                                       |
---------------------------------------------------------------------------
|13. TYPE OF REPORT:                                                       |
|    INVESTIGATIVE FINDINGS                                                |
---------------------------------------------------------------------------
|TOPIC: SEIZURE OF WOLFGANG OEHME'S AVANCE VESSEL.                         |
---------------------------------------------------------------------------
```

14. SYNOPSIS:
The following investigation pertains to Alexander HERRMANN,
Wolfgang OEHME, Marcus EFFLAND, Klaus LAUTERBACH and others for
their participation in an international money laundering and fraud
scheme.  The aforementioned individuals received funds from one
hundred and twenty five "customers" through misconception and false
pretenses.  The funds were then transferred to the United States
contrary to law.

The following report pertains to the seizure of OEHME's 33 foot
1993 Avance vessel.  The details regarding the seizure are
contained herein.

```
---------------------------------------------------------------------------
|15. DISTRIBUTION:     |                                                   |
|RACWP SACMI           |16. SIGNATURE:                                     |
|                      |   PUFF          WILLIAM   J  SPECIAL AGENT        |
|                      |---------------------------------------------------|
|                      |17. APPROVED:                                      |
|                      |   ODEN          MARK      F  OI GRP SUPERVISOR    |
|                      |                                                   |
|                      |                                                   |
|                      |                                                   |
|                      |---------------------------------------------------|
|                      |18. ORIGIN OFFICE: WP |19. TELEPHONE: 561 659 4606 |
|                      | W PALM BEACH - RAC   |                            |
|                      |                      |20. TYPIST: PUFF            |
---------------------------------------------------------------------------
```

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

```
-------------------------------------------------------------------
|        DEPARTMENT OF THE TREASURY        |1. PAGE   2           |
|        UNITED STATES CUSTOMS SERVICE     |---------------------- |
|                                          |2. CASE NUMBER WP02PT93WP0005|
| R E P O R T   O F   I N V E S T I G A T I O N |-------------------|
|        C O N T I N U A T I O N           |3. REPORT NUMBER: 051 |
|                                          |                      |
-------------------------------------------------------------------
```

DETAILS OF INVESTIGATION

The following investigation pertains to Alexander HERRMANN,
Wolfgang OEHME (aka Thomas WOOD) and others, for their
participation in an international money laundering and fraud
scheme.

On September 17, 1996, OEHME's 33 foot Avance vessel was seized at
Hideaway Yacht Sales, Inc. located at 599 South Federal Highway,
Pompano Beach, Florida.

The vessel was removed from the storage warehouse and subsequently
placed on a trailer.  The vessel displayed two Florida
registrations, FL4155HW and FL7953JK.  According to the National
Law Enforcement Telecommunications System, FL4155HW was inactive
and FL7953JK was registered to:

        Cast A Line Marine Surveyors
        1821 North 45 Avenue
        Hollywood, Florida      33021

During an inventory of the vessel, a document titled "Sales
Contract for New or Used Boat" was found in a cabinet.  The
contract indicates that OEHME purchased the vessel for sixty nine
thousand four hundred seventy five dollars ($69,475.00).  According
to the contract, a fifteen thousand dollar ($15,000.00) deposit was
paid by check number 1021 and the balance was paid by cashiers
check.  At the bottom of the contract, there is a signature above
the "Purchaser's Signature" line which resembles OEHME's signature.
The signature above the "Sales Representative" appears similar to
"T. WOOD", OEHME's alias.  The contact was dated September 28,
1995.

Also found in the vessel was "FLORIDA POWERBOAT BROKERAGE, INC.
business cards displaying the name of "Thomas WOOD", OEHME's alias.

This seizure was recorded as S/A/S 9652030034901.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

101196                    TECS II - LIST OF RELATED RECORDS                    PAGE   1
                                                                              TN007051

                    2 RECORDS ARE RELATED TO BASE RECORD
WP02PT93WP0005051      RO1  CWP PUFF                W 101196


P9321499500CWP      OEHME            WOLFGANG      W M 040656
    SV  SERIOUS VIOLATOR FROM S/A/S (CF-151)                SUB-SOURCE

WP02PT93WP0005      CASE CWP PUFF              W 060293
    ALEXANDER HERRMANN ET AL.

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

O F F I C I A L   U S E   O N L Y

```
-------------------------------------------------------------------
|          DEPARTMENT OF THE TREASURY      |1. TECS ACCESS CODE 3  |
|          UNITED STATES CUSTOMS SERVICE   |-----------------------|
|                                          |2. PAGE    1           |
|  R E P O R T  O F  I N V E S T I G A T I O N |-------------------|
|                                          |3. CASE NUMBER WP02PT93WP0005|
-------------------------------------------------------------------
|4. TITLE: ALEXANDER HERRMANN ET AL.                              |
-------------------------------------------------------------------
|5. CASE STATUS:    INTERIM RPT                                   |
-------------------------------------------------------------------
|6. REPORT DATE |7. DATE ASSIGNED |8. CLASS |9. PROGRAM CODE |10. REPORT NO.|
|   101196      |    060293       |  1      |    200         |    050       |
-------------------------------------------------------------------
|11. RELATED CASE NUMBERS:                                        |
-------------------------------------------------------------------
|12. COLLATERAL REQ:                                              |
-------------------------------------------------------------------
|13. TYPE OF REPORT:                                              |
|    INVESTIGATIVE FINDINGS                                       |
-------------------------------------------------------------------
|TOPIC: INFORMATION REGARDING WOLFGANG OEHME'S 33' AVANCE VESSEL. |
-------------------------------------------------------------------
```

14. SYNOPSIS:

The following investigation pertains to Alexander HERRMANN,
Wolfgang OEHME, Marcus EFFLAND, Klaus LAUTERBACH and others for
their participation in an international money laundering and fraud
scheme.  The aforementioned individuals received funds from one
hundred and twenty five "customers" through misconception and false
pretenses.  The funds were then transferred to the United States
contrary to law.

The following report pertains to the events leading up the seizure
of OEHME's 33 foot 1993 Avance vessel.  The details of the events
leading to the seizure of the vessel are contained herein.

```
-------------------------------------------------------------------
|15. DISTRIBUTION:    |                                            |
|RACWP SACMI          |16. SIGNATURE:                              |
|                     |   PUFF        WILLIAM  J  SPECIAL AGENT    |
|                     |--------------------------------------------|
|                     |17. APPROVED:                               |
|                     |   ODEN       MARK    F  OI GRP SUPERVISOR  |
|                     |                                            |
|                     |                                            |
|                     |--------------------------------------------|
|                     |18. ORIGIN OFFICE: WP |19. TELEPHONE: 561 659 4606|
|                     |   W PALM BEACH - RAC |--------------------------|
|                     |                      |20. TYPIST: PUFF         |
-------------------------------------------------------------------
```

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

```
-----------------------------------------------------------------
|        DEPARTMENT OF THE TREASURY      |1. PAGE    2           |
|        UNITED STATES CUSTOMS SERVICE   |----------------------|
|                                        |2. CASE NUMBER WPO2PT93WP0005 |
| R E P O R T  O F  I N V E S T I G A T I O N |---------------|
|            C O N T I N U A T I O N     |3. REPORT NUMBER: 050 |
|                                        |                      |
-----------------------------------------------------------------
```

DETAILS OF INVESTIGATION

The following investigation pertains to Alexander HERRMANN, Wolfgang OEHME (aka Thomas WOOD) and others, for their participation in an international money laundering and fraud scheme.

On September 13, 1996, OEHME was arrested in Boca Raton, Florida, on a warrant of arrest issued in the Southern District of Florida. The warrant of arrest was issued pursuant to a request from the Federal Republic of Germany for OEHME's participation in a 5.8 million dollar international fraud perpetrated in Germany.  Prior to OEHME's arrest, he attempted to hide two bags containing bank statements and records.  After OEHME was arrested, the two bags were recovered.

A search of the bags revealed a file containing documentation pertaining to the purchase of a 33 foot 1993 Avance vessel, hull identification OMP331642193.  A document titled "Purchase and Sale Agreement" dated June 25, 1995, indicates that the aforementioned vessel was purchased by FLORIDA POWERBOAT BROKERS, INC.

The agreement indicates that the vessel was sold by Hideaway Yacht Sales, Inc. located at 750 South Federal Highway, Pompano Beach, Florida, 33060.  The address displayed on the agreement for FLORIDA POWERBOAT BROKERS, INC. was P.O. Box 104, 1007 North Federal Highway, Fort Lauderdale, Florida, 33304.  (This address is a post office box at "Mail Boxes Ect." which was utilized by Tracey WOOD, OEHME's wife.)  The agreement indicates that the vessel was purchased for fifty thousand dollars ($50,000.00) and a ten thousand dollar ($10,000.00) deposit was paid with check number 1001.  On page three of the agreement underneath the "buyer" block, a signature appears that resembles "T. WOOD."

Attached to the aforementioned agreement was a copy of the same agreement.  This second agreement displayed the same information except for the balance due block.  The balance due block displays the amount of forty thousand dollars ($40,000.00) and was paid in full with check number 1610.

Contained in the file was a Florida "Vessel Certificate of Title" for the vessel.  The following information was displayed on the title:

    Title No.:          1735817

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

```
--------------------------------------------------------------------------
|          DEPARTMENT OF THE TREASURY          |1. PAGE   3             |
|          UNITED STATES CUSTOMS SERVICE        |_____|
|                                               |2. CASE NUMBER WPO2PT93WPO0005 |
|   R E P O R T   O F   I N V E S T I G A T I O N |_____|
|            C O N T I N U A T I O N            |3. REPORT NUMBER: 050  |
--------------------------------------------------------------------------
```

```
     Manufacturer:          Offshore Marine
     Model year:            1993
     Hull Identification No.: OMP331642193
     Vessel Registration:   FL4155HW
     Hull Material:         Fiberglass
     Propulsion:            Outboard
     Fuel:                  Gas
     Use of Vessel:         Pleasure
     Hull Length:           32 8
     Audit number:          2526117
     Registered Owner:      Faust, Charles T.
                            601 SW Bay Point Circle
                            Palm City, Florida    34990
     Date of Issue:         January 19, 1993
     1st Lien Holder:       None
     2nd Lien Holder:       None
```

On September 14, 1996, Special Agent William Puff and Boca Raton
Police Department Detective James Burke interviewed Pierre
Gaudreau, the president of Hideaway Yacht Sales located in Pompano
Beach, Florida.  The interview was regarding Gaudreau's knowledge
of OEHME (WOOD) and the transfer of the vessel.  (During this phase
of the interview, Gaudreau referred to OEHME as "WOOD.")

Gaudreau stated that he met OEHME approximately three and a half
years ago.  According to Gaudreau, OEHME wanted to rent office
space in Hideaway Yacht Sales' building to start a boat business.
Gaudreau stated that his rent and telephone fees were too expensive
and OEHME didn't move in.

Regarding the 33 foot Avance vessel, Gaudreau stated that he
received the vessel on a trade.  OEHME first looked at the 33 foot
Avance then purchased it in June of 1995 for fifty thousand
dollars.  Gaudreau stated that OEHME purchased the vessel to sell
at a later time and the vessel was purchased by FLORIDA POWERBOAT
BROKERAGE, INC.  When questioned regarding FLORIDA POWERBOAT
BROKERAGE, INC., Gaudreau stated that it came from FLORIDA
POWERBOAT CLUB, INC. which sponsors trips to the "islands and the
Keys."

During in the interview, Gaudreau was referred to OEHME utilizing
the name "WOOD."  At this time, Gaudreau referred to OEHME
utilizing the name OEHME.  When S/A Puff questioned Gaudreau about
this, Gaudreau stated he knew OEHME by both names.  Gaudreau stated
that OEHME had problems with the police and he changed his name and

                    O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF THE TREASURY | 1. PAGE   4 |
|---|---|
| UNITED STATES CUSTOMS SERVICE | 2. CASE NUMBER WP02PT93WP0005 |
| R E P O R T   O F   I N V E S T I G A T I O N   C O N T I N U A T I O N | 3. REPORT NUMBER: 050 |

was hiding in North Miami for a while. Gaudreau stated that OEHME had a Cigarette vessel that was "repossessed" because of the police problems.

Gaudreau stated that OEHME and an individual identified as Randy SWEERS utilized the vessel. The last time the vessel was used was approximately two months ago. According to Gaudreau, the vessel was put in the water and OEHME cleaned the vessel.

Subsequent investigation determined that OEHME's vessel was stored at Hideaway Yacht Sales facility. The vessel displayed Florida registration "FL4155HW." According to the National Law Enforcement Telecommunications System, the vessel's registration was an "inactive record."

In OEHME's smaller bag was a checkbook for a First Union "Cap Account", account number 9980652582. The checks displays the name of "Thomas WOOD" and the address of 1007 North Federal Highway, Suite 104, Fort Lauderdale, Florida, 33304. (The aforementioned address is a post office box at Mail Box Etc. utilized by Tracey WOOD, OEHME's wife.) In the "Cap Account Register", number "1001" displays an entry dated "7-29" followed by the words "Hideaway" and "Avance" and an entry of "10,000" in the payment and withdrawal column.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE US CUSTOMS SERVICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

101196                   TECS II - LIST OF RELATED RECORDS               PAGE   1
                                                                         TN007051
                    4 RECORDS ARE RELATED TO BASE RECORD
WP02PT93WP0005050     ROI  CWP PUFF              W 101196


P9321499500CWP        OEHME          WOLFGANG        W M 040656
        SV  SERIOUS VIOLATOR FROM S/A/S (CF-151)               SUB-SOURCE

P9609361400CWP        WOOD           TRACEY          W F 100767
        SC  SUBJECT OF CURRENT INVESTIGATION                   SUB-SOURCE

X9602290900CWP        FLORIDA POWERBOAT BROKERAGE, INC.
        SC  SUBJECT OF CURRENT INVESTIGATION                   SUB-SOURCE

WP02PT93WP0005         CASE CWP PUFF              W 060293
        ALEXANDER HERRMANN ET AL.


OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6198-CR-HURLEY

UNITED STATES OF AMERICA,

      Plaintiff,

-vs-

MAXIMILLIAN C. MATETICH,

      Defendant.

_____/

**GOVERNMENT'S NOTICE OF FILING THE AFFIDAVIT
OF A BOND HEARING WITNESS**

    The United States, by and through the undersigned Assistant United States Attorney, files

this Notice of Filing the Affidavit of A Bond Hearing Witness and states:

    1.  The government previously filed a Motion to Reopen the Pretrial Detention Hearing

pursuant to Title 18, U.S.C. 3142(f) and Motion for Nebbia Inquiry pursuant to Title 18, U.S.C.

3142(g)(4).

    2.  This affidavit represents the testimony that this witness would offer at the Pretrial

Detention hearing.  This witness has a long standing vacation planned on a sailboat in the

Mediterranean Sea during the time that this matter would be set for hearing.  Undersigned counsel

has provided a copy of this affidavit to defense counsel, along with the telephone number of the

1

witness. The witness is departing the United States on Saturday, August 26 and is returning to the

United States on September 9, 2000.

WHEREFORE, the government presents the testimony of the witness by affidavit.

Respectfully submitted,

GUY S. LEWIS
UNITED STATES ATTORNEY

By: *Nancy Vorpe Quinlan*

NANCY VORPE QUINLAN
Assistant United States Attorney
Florida Bar No. 0593532
500 Australian Avenue
West Palm Beach, Florida 33401
Tel: (561) 820-8711 ext 3054
Fax: (561) 820-8777

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the Government's Notice of Filing the Affidavit of A Bond Hearing Witness was sent by fax to Howard Srebnick, Esquire this 25th day of August, 2000.

*Nancy Vorpe Quinlan*

NANCY VORPE QUINLAN
Assistant United States Attorney

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6198 - CR HURLEY

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MAXIMILLIAN C. MATETICH,

      Defendant.

_____/

### AFFIDAVIT OF ANDRE J. ZAMORANO

State of Florida

County of Dade

      **BEFORE ME** personally appeared ANDRE J. ZAMORANO, who after being duly sworn

states the following:

    1.     My name is Andre J. Zamorano and I am over eighteen (18) years of age.

    2.     I am an attorney licensed to practice in the State of Florida.

    3.     I have personal knowledge of the matters set forth in this affidavit.

    4.     I have reviewed the Government's Motion to Reopen Pretrial Detention and Motion

For Nebia Inquiry (the "Motion"), particularly the statements contained in paragraph two of the

Motion.

5.     I hereby represent that the following statements attributed to me in the Motion are true and correct:

> That I was involved in a personal relationship with Marie-Ange Caravano

> That Marie-Ange Caravano was not residing in the Defendants apartment, rather she had been living in her own apartment and had been living there for some period of time

> That Ms. Caravano had consulted with her mother after the hearing and her mother had advised her not to sign any documents or to say anything

> That Ms. Caravano did not understand the implications of the bond or that she would be liable to the United States Government

6.     My relationship with Marie-Ange Caravano began after she represented to me that she was no longer involved with the Defendant. At that time she removed all of her personal belongings from the Defendant's apartment and moved into a separate apartment in the same building. Since that time she has lived exclusively in this new apartment and has otherwise been in daily communication with me.

7.     Ms. Caravano has represented to me on several different occasions that she is not the Defendant's girlfriend or fiancee, she does not want to live with the Defendant and does not want to sign any bond on behalf of the Defendant.

8.     While I am prepared to testify before this Court regarding these facts, I will be traveling out of the Country for the next two weeks and will not return to the jurisdiction until

September 9, 2000.


FURTHER AFFIANT SAYETH NAUGHT.

_____
AFFIANT

*WITNESS* my hand and seal in the State and County aforementioned this 24 day of

August, 2000.

THELMA GARCIA SAMANIEGO
Notary Public, State of Florida
My comm. expires July 23, 2003
Comm. No. CC840703
I.D. #194811
Bonded thru Service Insurance Company, Inc.

_____
NOTARY PUBLIC

Miami-11374.1

3