UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-6198-CR-HURLEY/VITUNAC

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MAXIMILLIAN C. MATETICH,

    Defendant.

_____/



### ORDER GRANTING GOVERNMENT'S MOTION FOR REVOCATION OF MAGISTRATE'S ORDER RELEASING DEFENDANT ON BOND

### I. INTRODUCTION

The Government appeals the Magistrate Judge's Order of August 18, 2000 granting the Defendant's release on bond pending trial. While this case is assigned to Judge Hurley, the Undersigned, following direction from the Eleventh Circuit Court of Appeals, has been assigned the matter on an emergency basis in Judge Hurley's absence from the District. Accordingly, the Undersigned held a *de novo* proceeding on September 26 and 27, 2000. At that time, the Government called Special Agent Chris Mathes; United States

1

Customs Inspector Richard Wynns; DEA Agent Roberto E. Bryan Jr., and Special Agent William Puff. The Defendant called Randall Sweers and proffered the testimony of Marie Ange Caravano who was available for cross-examination.

## II. BACKGROUND FACTS

On August 15, 2000, the Defendant was charged by superseding indictment, along with two co-defendants, with conspiring to import "Ecstasy" into the United States, in violation of Title 21, United States Code, Section 952(a), and with knowingly and intentionally possessing with intent to distribute "Ecstasy," being a scheduled I controlled substance, in violation of Title 21, United States Code, Section 841(a) and Title 18 United States Code, Section 2 [D.E. # 20].The Defendant was arrested on July 24, 2000 and was held as a pretrial detainee. On August 17, 2000, the Defendant moved for bond. The Magistrate Judge held a pretrial detention hearing on August 18, 2000. At the detention hearing, the Government relied primarily on the factual allegations of the complaint, claiming that the Defendant was a risk of flight and danger to the community. While the Defendant did not contest the strength of the Government's case, he argued that he was not a risk of flight because he resided in South Florida for five years, has a business, paid his rent, is college

graduate, and was only charged with this one episode. While acknowledging that he was a Canadian citizen, he argued that his co-defendants were released on a personal surety bond of $100,000.00, and that he should be afforded similar treatment based on his limited role in the offense. He further relied on the appearance of close friends from Canada, and the testimony from one Canadian friend who resided in South Florida, as well as testimony from his girl friend, a French National, who also resides in South Florida. He claimed he lived a modest lifestyle. He argued that the Government's evidence only supported a finding of insignificant income earned from the alleged ecstasy business. At the conclusion of the hearing, the Magistrate Judge found that the offense carries a penalty in excess of ten years and the presumption arises as to risk of flight and danger to the community, but that the Defendant had overcome the presumption. No further findings were rendered. The Magistrate Judge set a $100,000.00 corporate surety bond and a $500,000.00 personal surety bond to be signed by the Defendant, his girl friend Marie Ange Carvavano, and by his Canadian friend, Randall Sweers. A Nebbia condition was imposed on the bond. In addition, the Magistrate Judge ordered the Defendant to surrender all passports and travel documents to Pretrial Services; to wear electronic monitoring; to sign a waiver of extradition from

Canada to the United States; to report to Pretrial Services two times a week by phone and once a week in person; to comply with a curfew from 9:00 P.M. until 7:00 A.M., and to submit to random drug testing [D.E. # 25].

On August 23, 2000, the Government moved to reopen the pretrial detention hearing and for a Nebbia inquiry [D.E. # 28]. By its pleadings, it raised issues concerning Mr. Sweers and Ms. Caravano's ability to comply with the Magistrate Judge's bond and Nebbia conditions. A hearing was held on the Government's motion on August 29, 2000 where Mr. Sweers and Ms. Caravano again testified about their assets and their relationship to the Defendant. At the conclusion of the hearing, the Magistrate Judge reaffirmed his earlier ruling and further found that Mr. Sweers had met the Nebbia requirements of the bond. At the Government's request, the bond was stayed until noon August 30, 2000.

By order of Judge Hurley, the Magistrate Judge's order setting bond was further stayed pending full review by the court [D.E. # 43]. On August 31, 2000, the Defendant moved to dissolve the stay which was denied by Judge Hurley on September 1, 2000 [D.E. # 52]. The Defendant then sought a writ of mandamus from the Eleventh Circuit Court of Appeals to require a judge within the Southern District of Florida to hear the matter in Judge Hurley's absence.

As stated, the Undersigned was selected to do on an emergency basis following direction from the Eleventh Circuit. As such, the Court now addresses the Government's motion for revocation of the Magistrate Judge's order releasing the Defendant on bond.

### III. CONCLUSIONS

Upon reviewing the Government's motion and the record below, this Court finds it necessary to consider other evidence than that proffered to the Magistrate Judge in order to consider factual issues which remain unresolved. Of particular concern is the basis upon which the Magistrate Judge concluded that the statutory presumption has been rebutted. While the Magistrate Judge correctly determined that the offense at issue carries a penalty in excess of ten years and the presumption arises as to risk of flight and danger to the community, no additional findings were made as to how and why the presumption was overcome. Admittedly, the Magistrate Judge is not required to enter such findings when no detention is ordered. Nonetheless, the absence of such findings makes further review by this Court more difficult. Here, however, the additional evidence clearly affects the validity of the Magistrate Judge's limited findings and conclusions, and causes this Court to conclude that the Magistrate's denial of detention was in error.

The Criminal Complaint Affidavit presented to the Magistrate Judge stated that, beginning on July 5, 2000, pursuant to an on going DEA investigation, approximately 30,000 dosage units of MDMA were seized by the DEA. More particularly, on July 5, 2000, a sample of eight MDMA dosage units, bearing the emblems of "A1" or a star symbol were seized. On July 7, 2000, approximately 10,000 dosage units of MDMA were seized bearing the emblems of "A1" or a star symbol. On July 12, 2000, approximately 10,000 dosage units were seized, bearing the emblems of "007" or a triangle symbol. On July 14, 2000, approximately 10,000 dosage units of the seized MDMA were tested and confirmed positive for the presence of MDMA (ecstasy).

Subsequent to the seizures, two defendants were arrested and cooperated with law enforcement. These defendants identified their source for the ecstasy as a person named "Charlie" Matetich. One of these defendants then became a confidential source.

Beginning on July 20, 2000, the Confidential Source had a series of recorded telephone conversations with Defendant Matetich who at the time of the phone calls was in Europe and then in Canada. During the telephone conversations, Defendant Matetich and the Confidential Source discussed the July 5th, July 7th, July 12th, and July 14th, 2000 shipments of MDMA. They

discussed the symbols on the tablets, specifying the "007," the stars, the triangles, and the "A1" symbols, and the fact that the shipments were not of a good quality. They also discussed conducting another deal for 10,000 pills, for a price of $24,000. Also, an amount of $4,200.00 had to be sent to pay off a previous debt for ecstasy pills.

On Friday, July 21, 2000, DEA sent a series of Western Union money transfers to Amsterdam in the Netherlands representing the $4,200. In a subsequent telephone conversation between the Confidential Informant and the Defendant, they discussed the Western Union tracking numbers for the $4,200. DEA confirmed that the $4,200 was retrieved in the Netherlands the next day.

On July 24, 2000, the Defendant arrived by airplane at the Fort Lauderdale airport from Canada. The Confidential Informant met the Defendant at the airport. The Confidential Informant was wired for transmission of the conversations. The DEA agents listening to the conversations heard the Defendant state that "he had received the $4,200." Later that same day, the Defendant was taken into custody in Miami, Florida. After being advised on his *Miranda* rights, he admitted that he was in the ecstasy business. He disclosed the name of his source for ecstasy and stated that he owed this source

$100,000. Agents also seized a ledge book from him which the Defendant stated memorialized the debt of $100,000 to this source.

At the detention hearing before this Court, the following additional evidence was presented: (1) the actual tapes and transcripts which were not played or presented to the Magistrate Judge; (2) the Defendant's address/telephone book seized at the time of his arrest; (3) a second address/telephone book seized at the time of his arrest; (4) copies of the Defendant's telephone cards; (5) a copy of the Defendant's ledger notebook; (6) a copy of the Defendant's passport; (7) a copy of the Report of Investigation containing the Defendant's post arrest statement; (8) an Office of International Affairs Declaration regarding Canadian Extradition, and (9) an immigration detainer on the Defendant. The additional evidence substantiates that this Defendant is a danger to the community and poses a significant risk of flight.

In this case, detention is proper because no condition or set of conditions will reasonably assure the safety of the community and significant risk of flight. The Government has shown by clear and convincing evidence that the Defendant is a wholesaler/broker who is close to the production source. He is directly involved in a high volume and extremely profitable ecstasy distribution scheme which delivers tens of thousands of pills between various points in

Europe and the United States, including South Florida.

The Government has a very strong case against the Defendant. On the transcripts, the Defendant admits shipping 30,000 ecstasy pills to the United States. He was the source of those pills which he obtained in Europe. The Government supported its case, well-beyond what was presented to the Magistrate Judge through the testimony of agents of the DEA and customs officers, as well as the actual transcripts of tapes, and other documentary evidence tying the Defendant to multiple illegal ecstasy transactions involving substantial sums of money.

Although the Defendant argues that ecstasy is not inherently dangerous compared to other cocaine or other such illegal substances, the United States Congress has made trafficking in ecstasy a serious crime punishable with a maximum sentence of 40 years. The testimony supports that ecstasy is marketed mainly to young adults in nightclubs at prices averaging twenty-five dollars a pill. Even the condition of electronic monitoring or house arrest does not prevent the Defendant from accessing by telephone, through the use of long distance phone cards and intermediaries, his extensive distribution network, as evidenced from his telephone books and ledger. Simply put, the Defendant has the ability, and the incentive, to continue his business whether

in Miami or abroad.

Further, the Defendant poses a significant risk of flight. He is a Canadian citizen, with access to multiple identification cards with differing birth dates. He travels extensively in Europe, Canada and the United States. At the same time, he has no record of employment, but, by clear and convincing evidence, has access to significant funds abroad and a high credit rating within his organization, known as his "bar tab." He talks on the transcripts about his ability to move money quickly and efficiently.  He has no record of any permanent residence anywhere. He only has a rental apartment in Miami. He has no ties in the United States and is illegally here. His girl friend is a resident of France. He also faces a significant guideline sentence of approximately 78 to 97 months.

As with the dangerousness issue, when seeking pretrial detention, the Government may utilize the statutory presumption found in section 3142(e) that those charged with illegal substance offenses often pose an especially high risk of flight. While the Defendant came forward with some evidence to show that he was not inclined to flee, this evidence is not sufficient to overcome the statutory presumption and the other evidence adduced at the hearings which supports detention by its preponderance. Based on the Court's *de novo*

review, the Court concludes that the presumption was not rebutted in light of the Defendant's significant incentive to flee a lengthy potential sentence, his significant drug connections outside the United States, his lack of ties with the United States, and his apparent ability to access substantial monies abroad.

One additional matter warrants consideration. The Defendant claims that the Government has "agreed" to bail for the two co-defendants, as well as other defendants engaged in the ecstasy distribution scheme who are now cooperating. The implication is that the Government has singled out the Defendant because of his lack cooperation and has used pretrial detention as a punishment.

While it is correct that the Government has agreed to bail for other co-defendants, the Court concludes that the situation here is distinguishable based upon a number of factors, including the Defendant's more significant role within the distribution network, the disgorgement of illegal funds by other defendants, the poor state of health of another foreign defendant who is most comparable to the Defendant, and the like. While the Government's position regarding bail for other defendants involved in the distribution scheme is a factor to be considered, particularly in evaluating potential danger to the community and risk of flight, each case must be evaluated on its own evidence

and merits. Here, the evidence is more than adequate to warrant detention.

**WHEREFORE**, it is **ORDERED** that the Magistrate Judge's order permitting bond is reversed, and the Defendant shall be held in pretrial detention pending trial.

**ORDERED** this 29 day of September, 2000.

Alan S. Gold
United States District Judge

c.c.
Honorable Daniel T.K. Hurley
Magistrate Judge O'Sullivan
AUSA Nancy Vorpe Quinlan
Howard Srebnick, Esquire
Heidi A. Schulz, Esquire

Via Fax