UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED BY

00 OCT -2 PM 2: 17

CLARENCE HADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

UNITED STATES OF AMERICA,

v.

MAXIMILLIAN MATETICH,

REC'D by _____ D.C.

OCT 3 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

Case No. 00-6198-CR-Hurley

REC'D by _____ D.C.

OCT 3 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## MATETICH'S MOTION FOR RECONSIDERATION OF HIS PRETRIAL DETENTION STATUS

On Friday, September 29, 2000, Judge Alan Gold revoked the release order entered by Magistrate Judge O'Sullivan, following a *de novo* hearing during which the government presented testimony establishing the strength of its case against the defendant. The government also presented an affidavit of a government official suggesting that Mr. Matetich's extradition waiver – a condition of bond imposed by Magistrate Judge O'Sullivan – was not enforceable.

Mr. Matetich respectfully requests that Judge Gold reconsider his ruling in light of *United States v. Cirillo*, 1999 WL 1456536 (3d Cir. 1999) (attached), in which the court of appeals reversed a district judge and reinstated the bond set by a magistrate judge for a Canadian citizen, like Mr. Matetich, charged with conspiracy to distribute over $300,000 of ecstacy, a crime carrying a maximum sentence in excess of 10 years which invoked the presumption of flight risk and danger to the community. *Id.* at note 1. The defendant had no ties to the United States, as he was simply passing through Philadelphia as part of an ecstasy distribution. Nevertheless, the magistrate judge

released defendant on bail in the amount of $500,000-10% cash, subject to certain conditions. The following conditions were imposed upon defendant:

-1-

BLACK, SREBNICK & KORNSPAN, P.A., 201 S. BISCAYNE BOULEVARD., SUITE 1300, MIAMI, FL 33131 (305) 371-6421

(1) sign an irrevocable waiver of extradition; (2) travel is restricted to Ontario, Canada and Philadelphia, Pennsylvania; (3) report every other day by telephone to Pretrial Services in Philadelphia, Pennsylvania; (4) live at home with defendant's parents in Ontario, Canada; and (5) a $500,000-10% cash bond shall be signed by defendant's sister, the fiancee of defendant's sister, and a family friend.

*United States v. Cirillo*, 51 F.Supp.2d 605, 607-08 (E.D. Pa. 1999) (attached). The district judge revoked the release order, based on the following findings:

1. Defendant is a Canadian national with no ties to either the United States in general or the Eastern District of Pennsylvania in particular, and who retains a valid passport.

2. Defendant faces up to seventy-eight (78) months of imprisonment, if convicted, pursuant to the Sentencing Guidelines.

3. Defendant's passport indicates that since March, 1997, defendant has taken several trips abroad, including one (1) trip to Venezuela, five (5) trips to the Bahamas, four (4) trips to the United States, and two (2) trips to the Netherlands. * * *

5. A letter from counsel at the Canadian Ministry of Justice advises that there is legal difficulty in executing an appearance bond and collecting judgment in Canadian courts in the event of a default.

6. The same letter from counsel at the Canadian Ministry of Justice also declares that there is legal uncertainty whether defendant may be extradited from Canada, and, if so, whether such proceedings would be lengthy.

7. Defendant could not be subject to in-person supervision by Pretrial Services while on bail in Canada.

8. The evidence shows that defendant arrived in the United States from a city that is the primary source for the manufacture of "ecstasy," that he is employed in a trade, specifically, as owner of a nightclub, where ecstasy is widely consumed, that he was *** identified by [the courier] as the person with whom he dealt in a prior transaction in Philadelphia with the same modus operandi,*** and that an amount of ecstasy valued between $300,000 and $500,000 was found in the false bottom of [the courier]'s suitcase.

9. There is evidence of defendant's consciousness of guilt because defendant provided false information to Customs Inspectors concerning his travel plans so as to disguise his visit to the United States, and registering at a hotel under a false name.

-2-

The Third Circuit reinstated the bond, persuaded that the magistrate judge correctly determined that the defendant's appearance at trial could be reasonably assured given the defendant's execution of an "irrevocable waiver of extradition." Even thought the defendant had zero ties to the United States, much less the district of prosecution, the appellate court was impressed by the defendant's lack of a prior criminal record, the non-violent nature of the crime, and the defendant's family's willingness "to secure his release through a mortgage against their home, worth an estimated $200,000, and a pledge of the substantial (over $500,000) assets of their business." 1999 WL 1456536 (3d Cir. 1999) (citing United States v. Himler, 797 F.2d 156, 161-62 (3d. Cir. 1986)).

To secure Mr. Matetich's release, Randall Sweers appeared before the court three times and pledged a home in Fort Lauderdale and all the assets of his business, valued in excess of $500,000. Thus, the financial conditions set by Magistrate Judge O'Sullivan are virtually identical to the bond approved by the Third Circuit in Cirillo. Moreover, Matetich has a residence in South Florida whereas Cirillo would be residing in Canada pending trial. Given the conditions of electronic monitoring, curfew and the execution of the waiver of extradition imposed by Magistrate Judge O'Sullivan, coupled with the DEA agent's testimony that Mr. Matetich does not have any drug distribution network in Florida, the decision to incarcerate Mr. Matetich pretrial should be reconsidered.

The only consistent factor that distinguishes Mr. Matetich from all five alleged co-conspirators who have been released on bail with the consent of the government, one of whom is a foreign national, is that they have decided to "cooperate" with the government rather than demand a trial by jury. Mr. Matetich's codefendant, who was described the DEA agent as the "head" of a distribution organization in South Florida, is at liberty on a

personal surety (signature) bond with no property or collateral securing his release, all with the government's consent.

The irony, of course, is that bail is meant to protect a presumptively innocent defendant from punishment prior to conviction. The five coconspirators resigned themselves to a conviction and were immediately released on bail. Mr. Matetich entered a plea of not guilty and could not even get a bail hearing from a U.S. District Judge until the U.S. Court of Appeals for the Eleventh Circuit issued a writ of mandamus.

To those who attended court on his behalf, three of whom flew in from Canada to attend the initial bail hearing, these proceedings have had a Kafka-esque quality. Mr. Matetich's admittedly guilty codefendants are at liberty, while he remains locked up awaiting trial, a paradox not easily explained. The Bail Reform Act does not tell of an answer.

We are grateful for the attention paid to this case by Judge Gold, although we respectfully disagree with the conclusion that no conditions could insure Mr. Matetich's appearance in court and the safety of the community. We request that the conclusion be reconsidered in light of the Third Circuit's decision in *Cirillo.*

Respectfully submitted,

**BLACK, SREBNICK & KORNSPAN, P.A.**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Phone: (305) 371-6421
Fax:    (305) 358-2006

By _____
    **HOWARD M. SREBNICK, ESQ.**
    Florida Bar Number 919063

-4-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this motion was furnished by fax and mail to: **AUSA NANCY VORPE QUINLAN,** 500 Australian Avenue, Suite 400, West Palm Beach, FL 33401 on this 2d day of October, 2000.

By _Howard Srebnick_

**HOWARD M. SREBNICK, ESQ.**

1999 WL 1456536
**(Cite as: 1999 WL 1456536 (3rd Cir.(Pa.)))**

Only the Westlaw citation is currently available.

United States Court of Appeals, Third Circuit.

**UNITED STATES OF AMERICA**
**v.**
**Vincenzo CIRILLO a/k/a Enzo Cirillo a/k/a Mike**
**Fusco Vincenzo Cirillo,**
**Appellant**

**No. 99-1514.**

July 13, 1999.

On Appeal from the United States District Court for
the Eastern District of Pennsylvania. (D.C.Crim. No.
99-cr-00335-1).

Before: BECKER, Chief Judge, RENDELL and
ALDISERT Circuit Judges.

ORDER

BECKER, Chief J.

**\*1** This case comes before us as a Motion to Vacate
the District Court's Pretrial Detention Order and to
Reinstate the Magistrate Judge's Release Order, On
May 17, 1999, appellant Vincenzo Cirillo, a citizen and
resident of Canada, was arrested in Philadelphia, and
later charged with conspiracy to distribute a controlled
substance. On May 25, 1999, a Magistrate Judge found
that probable cause existed to charge Cirillo, but
ordered his release upon posting of $500,000 (10
percent cash) bond. The Magistrate Judge also
established certain conditions of release, including
Cirillo's signing of an "irrevocable waiver of
extradition." On June 3, 1999, the District Court
entered an oral order from the bench, revoking the
Magistrate Judge's release. A written order followed, on
June 8, 1999, revoking the release order and ordering
Cirillo held in custody pending trial. On June 25, 1999,
Cirillo, through counsel, filed the present motion to
vacate the District Court's order and to reinstate the
Magistrate Judge's order.

We have jurisdiction to consider this motion under 18
U.S.C. § 3145(c), and 28 U.S.C. § 1291. Our review of
the District Court's order is de novo. See United States
v. Delker, 757 F.2d 1390, 1400 (3d Cir.1985)
("[A]ppellate courts [must] give the reasons articulated

by trial judges respectful consideration, but if, after
careful assessment of the trial judge's reasoning,
together with such papers, affidavits, and portions of
the record as the parties present, the court of appeals
independently reaches a conclusion different from that
of the trial judge the court of appeals has the power to
amend or reverse a detention or release decision.").

A defendant may not be detained pending trial unless
"no condition or combination of conditions will
reasonably assure the appearance of the person as
required and the safety of any other person and the
community." 18 U.S.C. § 3142(e). In ordering Cirillo
held pending trial, the District Court relied solely on
the fact that Cirillo's appearance at trial could not be
"reasonably assured," even with the conditions imposed
by the Magistrate Judge. The burden is on the
government to prove by a preponderance that no
condition or combination of conditions exists that can
reasonably assure the defendant's appearance at trial.
See United States v. Himler, 797 F.2d 156, 161 (3d
Cir.1986).

The factors governing the above determination are
outlined in 18 U.S.C. § 3142(g). They include the
weight of the evidence against the defendant, the
"nature and circumstances of the offense charged," the
"history and characteristics of the person," including
whether the defendant was on probation or parole at the
time of the alleged offense, and the "nature and
seriousness of the danger to any person or the
community that would be posed by the person's
release." The government has presented sufficient
prima facie evidence of Cirillo's commission of the
charged crime that the Magistrate Judge found probable
cause existed to charge Cirillo. Our review of the
record supports this conclusion. However, the weight
of the evidence against the defendant is only one of the
relevant factors. Each of the other factors favors
Cirillo.

**\*2** Cirillo's strong family ties, lack of a prior criminal
record, employment in a well-established family
business, alleged commission of a nonviolent crime,
and signing of an "irrevocable waiver of extradition"
all support the Magistrate Judge's conclusion that his
appearance at trial can be reasonably assured. This is
particularly true given his family's willingness to secure
his release through a mortgage against their home,
worth an estimated $200,000, and a pledge of the
substantial (over $500,000) assets of their business.

See United States v. Carbone, 793 F.2d 559, 561 (3d Cir.1986) (holding that district court correctly released defendant before trial, when defendant's friends "posted one million dollars in property as surety," defendant was a first time offender with an offer of employment pending trial, and he was confined to his parent's home from 8pm to 6am every day until trial); cf. Himler, 797 F.2d at 161-62 (holding that lower court erred in ordering defendant held pending trial, despite the fact that the defendant's father had offered only $2000 to secure his release, defendant was unemployed, and he was "clearly capable of obtaining false identification"). Finally, the supporting documents produced on Cirillo's behalf by Canadian and United States attorneys adequately respond to the government's single document from the Department of Justice indicating that collecting Canadian assets in a bail forfeiture proceeding or extraditing a defendant from Canada would not be "simple matter[s]." [FN1]

> FN1. Contrary to the District Court's intimations, see Dist.Ct.Op. at 7 n. 2, the rebutable presumption in § 3142(e) does apply in this case, as Cirillo was charged with one of the enumerated offenses that carry a maximum prison term of more than ten years. See 21 U.S.C. § 841(b)(1)(C). The presumption applies regardless of the maximum term that Cirillo would face under the Sentencing Guidelines. We have considered the presumption, however, and find that Cirillo has presented sufficient evidence to rebut it. Once he has done so, the burden of persuasion remains on the government, see United States v. Suppa, 799 F.2d 115, 119 (3d Cir.1986), and our consideration of all of the factors in § 3142(g) leads us to conclude that Cirillo's appearance at trial can be reasonably assured, even given the offenses with which he is charged.

For the foregoing reasons, the Motion to Vacate the District Court's Order is hereby granted, and the case remanded to the District Court with directions to reinstate the Release Order of the Magistrate Judge, with such additional conditions that the District Court deems necessary to reasonably assure defendant's appearance at trial.

END OF DOCUMENT

51 F.Supp.2d 605
(Cite as: 51 F.Supp.2d 605)

United States District Court,
E.D. Pennsylvania.

**UNITED STATES of America, Plaintiff,**
v.
**Vincenzo CIRILLO, Defendant.**

**No. MISC. 99-393-1.**

June 8, 1999.

Prosecutor filed motion for revocation of release order entered by Charles Smith, Magistrate Judge, following denial of motion for pretrial detention. The District Court, Robreno, J., held that Canadian national charged with conspiracy to acquire 'ecstasy' in United States for distribution in Canada was risk for flight, and therefore subject to pretrial detention.

Motion granted.

West Headnotes

**[1] Bail** ⊜➡**42**
49k42

For court to order pretrial detention, Government must show by clear and convincing evidence that defendant is danger to the community, and/or must show by preponderance of the evidence that there is serious risk of flight. 18 U.S.C.A. § 3142(f).

**[2] Bail** ⊜➡**42**
49k42

Canadian citizen charged with conspiracy to possess with intent to distribute methamphetamine was not subject to pretrial detention as a danger to the community on ground that he was trafficking drugs, where evidence indicated that he intended to take drugs to Canada, and not to distribute them in United States. 18 U.S.C.A. § 3142(g).

**[3] Bail** ⊜➡**42**
49k42

Pretrial detention of Canadian national charged with conspiracy to possess with intent to distribute methamphetamine was appropriate on ground that there was serious risk of flight that no conditions would reasonably assure defendant's presence at trial, where effectuating extradition would have been difficult, there was legal uncertainty involved in executing on appearance bond and foreclosing on mortgage in Canada, evidence against defendant was strong, defendant had prior extensive foreign travel and had used false identity, defendant faced significant period of incarceration if convicted, and implementation of program of effective supervision in Canada while defendant was on bail would have been difficult. 18 U.S.C.A § 3142(g).

**[4] Bail** ⊜➡**42**
49k42

Contention that government could not show that defendant knew he was involved in drug transaction would not compel release from pretrial detention, since relative strength of the evidence against defendant is only one factor to be considered in complex calculus involved in decision to grant pretrial detention. 18 U.S.C.A. § 3142(g).

**\*606** Theodore Simon, Philadelphia, PA, for Vincenzo Cirillo, Defendant.

Linwood C. Wright, Jr., Philadelphia, PA, for U.S.

MEMORANDUM

ROBRENO, District Judge.

I. INTRODUCTION

Defendant, Vincenzo Cirillo, is a Canadian national who was arrested in Philadelphia, Pennsylvania pursuant to a complaint and warrant, charging him with conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846. Magistrate Judge Charles Smith held a probable cause and pretrial detention hearing over the course of two days, at the conclusion of which Magistrate Judge Smith found that the Government had shown probable cause. However, Magistrate Judge Smith denied the Government's motion for pretrial detention and released defendant on bail in the amount of $500,000-10% cash, subject to certain conditions. Before the Court is the Government's motion for revocation of Magistrate Judge Smith's release order pursuant to 18 U.S.C. § 3145(a) and for pretrial detention. For the reasons that follow, the Court will revoke Magistrate Judge Smith's release order of May 25, 1999 denying the Government's motion for pretrial detention and will order defendant held in custody pending trial. [FN1]

FN1. An order revoking Magistrate Judge Smith's

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

order of May 25, 1999 was issued from the bench orally at the conclusion of the June 3, 1999 hearing. The core of the Court's reasoning was stated on the record. This memorandum expands on the Court's reasoning for its decision.

## II. FACTS

On May 16, 1999, Michel Bleeker ("Bleeker") traveled from Amsterdam, Holland to Philadelphia, Pennsylvania. (Craven Aff. at ¶ 2.) During inspection by the United States Customs Service at the Philadelphia International Airport, a Customs Inspector discovered approximately 8.95 pounds of "ecstasy," an "enhancer" or "distorting" drug, which is a derivative of methamphetamine, hidden in a false compartment in a suitcase. (Craven Aff. at ¶ 3.) The ecstasy was valued between $300,000 and $500,000. (Tr. of May 21, 1999 at 20.) Bleeker was detained and decided to cooperate with the Government. (Craven Aff. at ¶¶ 4, 6; Tr. of May 21, 1999 at 62.) Bleeker informed the Customs Agents that he was originally scheduled to arrive in the United States on May 15, 1999 via a U.S. Airways flight from Amsterdam to Philadelphia. However, Bleeker at the last moment changed his travel plans and took a flight via Northwest Airlines on the following day, May 16, 1999. (Craven Aff. at ¶ 11; Tr. of May 21, 1999 at 99-100.) Bleeker told Customs Agents that he had no knowledge of the contents of the suitcase, and that, in return for $1,500.00, he was supposed to deliver the suitcase to another person at the Comfort Inn on Christopher Columbus Boulevard in Philadelphia, Pennsylvania. (Craven Aff. at ¶ 4; Tr. of May 21, 1999 at 69, 83-84.) Customs Agents escorted Bleeker to the Comfort Inn, where the agents kept Bleeker under surveillance. (Craven Aff. at ¶ 6; Tr. of May 21, 1999 at 62.)

Also on May 16, 1999, defendant, Vincenzo Cirillo, who is a Canadian national, traveled via U.S. Airways from Amsterdam, Holland to Philadelphia International Airport, accompanied by Roberto Alpinelli ("Alpinelli") and Alex Sirakoulas ("Sirakoulas"). (Tr. of May 21, 1999 at 64.) During inspection by Customs Agents, defendant *607 informed the agents that in a few hours, he was to catch another flight to return to Canada. Based on defendant's representations and a valid airline ticket in defendant's name for a flight from Philadelphia to Toronto, Canada that same evening, the Customs Inspector marked defendant's declaration form as "in transit." (Tr. of May 21, 1999 at 53.) "In transit" meant that defendant would not be staying in the

United States beyond his subsequently scheduled flight to Canada. (Tr. of May 21, 1999 at 53-54.) To the contrary, defendant did not catch his connecting flight to Canada. Rather, defendant, along with Alpinelli and Sirakoulas, checked into the same hotel as Bleeker, the Comfort Inn, under a false name, Mike Fusco. (Craven Aff. at ¶ 6; Tr. of May 21, 1999 at 64, 77.)

The following morning, on May 17, 1999, defendant called Bleeker and arranged to come to Bleeker's room. (Craven Aff. at ¶ 7.) As planned, defendant and Alpinelli went to Bleeker's room. While defendant remained in the hallway, Alpinelli stood in the doorway of Bleeker's room. (Craven Aff. at ¶ 8; Tr. of May 21, 1999 at 71.) Neither defendant nor Alpinelli entered the room. (Craven Aff. at ¶ 8; Tr. of May 21, 1999 at 71.) While Alpinelli stood at the door, Bleeker asked Alpinelli if Alpinelli wanted "the stuff." (Craven Aff. at ¶ 8.) Alpinelli abruptly left without the suitcase, and together with defendant, both retreated to the hotel lobby. (Craven Aff. at ¶ 10.) Defendant and Alpinelli were then arrested and searched. (Craven Aff. at ¶ 11.) Customs Agents found defendant in possession of approximately $2,000.00. (Tr. of May 26, 1999 at 74.) Customs Agents also found the airline tickets for defendant, Alpinelli, and Sirakoulas, all of which were replacement tickets for a previously scheduled U.S. Airways flight on May 15, 1999 from Amsterdam to Philadelphia, the same flight that Bleeker was originally scheduled to take, and from which Bleeker had switched to the Northwest Airlines flight on May 16, 1999. (Craven Aff. at ¶ 11; Tr. of May 21, 1999 at 99-100.) Defendant and Alpinelli were charged with conspiracy to possess with intent to distribute methamphetamine, and Bleeker was charged with possession with intent to distribute methamphetamine.

At the conclusion of the probable cause and pretrial detention hearing on May 21, 1999, Magistrate Judge Smith concluded that, as to Alpinelli, the Government failed to show probable cause, and Alpinelli was dismissed from the case. (Tr. of May 21, 1999 at 103.) Magistrate Judge Smith asked for further briefing on certain of the issues raised by defendant and scheduled a second hearing for May 25, 1999. After the hearing on May 21, 1999, the Government further debriefed Bleeker, who disclosed for the first time that he had engaged in a transaction with the same modus operandi as the instant transaction with defendant, on March 11, 1999, at the same Comfort Inn. (Tr. of May 25, 1999 at 19-20.) Bleeker informed the Government that on March 11, 1999,

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

51 F.Supp.2d 605                                                                                                      Page 3
(Cite as: 51 F.Supp.2d 605, *607)

Bleeker met defendant at the Comfort Inn, where defendant paid Bleeker $1,500.00 in exchange for transporting the same suitcase. (Tr. of May 25, 1999 at 5-6.) At the conclusion of the second hearing, and aided by this additional information, Magistrate Judge Smith found there was probable cause to hold defendant for trial.

Magistrate Judge Smith, however, denied the Government's motion for pretrial detention, and released defendant on bail in the amount of $500,000-10% cash, subject to certain conditions. (Tr. of May 25, 1999 at 37.)    The following conditions were imposed upon defendant: (1) sign an irrevocable waiver of extradition; (2) travel is restricted to Ontario, Canada and Philadelphia, Pennsylvania; (3) report every other day by telephone to Pretrial Services in Philadelphia, Pennsylvania; (4) live at home with defendant's parents in Ontario, Canada; and (5) a $500,000-10% cash bond shall be signed by defendant's sister, the fiancee of defendant's sister, and a family *608 friend. (Tr. of May 25, 1999 at 37-44.)    In response, the Government filed an emergency motion for revocation of release order and appeal pursuant to 18 U.S.C. § 3145(a), alleging that defendant is a risk of flight and a danger to the community.    The Court held hearings on May 26, 1999 and June 3, 1999, at which time, it heard testimony from Special Agent Robert E. Craven, received additional documents into evidence, and heard argument from counsel. The Court has also reviewed the transcripts of the hearings before Magistrate Judge Smith.

III. ANALYSIS

[1][2]  Pursuant to the Bail Reform Act, pretrial detention may be ordered "[i]f, after a hearing ... the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community...." 18 U.S.C. § 3142(e). [FN2]  In determining whether pretrial detention is warranted, the Bail Reform Act provides four factors to be considered by the court:

> FN2. The Court notes that § 3142(e) of the Bail Reform Act also creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person and safety of the community if the judicial officer determines that there is probable cause to believe that the person committed an offense that carries a maximum term of imprisonment of ten years or more. See 18 U.S.C. § 3142(e).    In this case, however, the

rebuttable presumption is not applicable as defendant only faces a range of imprisonment from sixty- three (63) to seventy-eight (78) months, pursuant to the Sentencing Guidelines, for a person who has an offense level of twenty-six (26) and a criminal history category of I. Therefore, the burden remains on the Government to show that defendant is a risk of flight and/or a danger to the community.

> (1) [t]he nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

18 U.S.C. § 3142(g).    For the court to order pretrial detention, the Government must show by clear and convincing evidence that defendant is a danger to the community, and/or must show by a preponderance of the evidence that there is a serious risk of flight. See 18 U.S.C. § 3142(f);  United States v. Himler, 797 F.2d 156, 161 (3d Cir.1986).    In this case, the Government contends that defendant is a serious risk of flight. [FN3]

> FN3. The Government asserts that its primary justification for pretrial detention of defendant is because defendant poses a serious risk of flight.   With less strength, the Government also contends that defendant is a danger to the community on the ground that he was trafficking drugs through Philadelphia. Given the stricter standard regarding proof of a danger to the community, it is evident that the Government has failed to show by clear and convincing evidence that defendant poses a danger to the community. Although it is alleged that defendant was trafficking drugs through Philadelphia, the evidence before the Court reveals that defendant intended to take the drugs to Canada, and not to distribute the drugs in Philadelphia.    Therefore, the Court's analysis of whether defendant should be subject to pretrial

51 F.Supp.2d 605
(Cite as: 51 F.Supp.2d 605, *608)

Page 4

detention focuses on the serious risk of flight, and not on any danger to the community posed by release of defendant pending trial.

*609 [3] After reviewing the transcripts of the hearings before Magistrate Judge Smith, and conducting two additional hearings, the Court finds that the Government has shown by a preponderance of the evidence that there is a serious risk of flight and that no condition or combination of conditions will reasonably assure the appearance of defendant as required. In reaching this conclusion, the Court considers the following factors:

1. Defendant is a Canadian national with no ties to either the United States in general or the Eastern District of Pennsylvania in particular, and who retains a valid passport.

2. Defendant faces up to seventy-eight (78) months of imprisonment, if convicted, pursuant to the Sentencing Guidelines.

3. Defendant's passport indicates that since March, 1997, defendant has taken several trips abroad, including one (1) trip to Venezuela, five (5) trips to the Bahamas, four (4) trips to the United States, and two (2) trips to the Netherlands.

4. Upon arrest and detention, Customs Agents found defendant with approximately $2,000.00 in his possession, an amount sufficient to pay the $1,500.00 that Bleeker contends he was owed for delivering the suitcase containing the drugs.

5. A letter from counsel at the Canadian Ministry of Justice advises that there is legal difficulty in executing an appearance bond and collecting judgment in Canadian courts in the event of a default.

6. The same letter from counsel at the Canadian Ministry of Justice also declares that there is legal uncertainty whether defendant may be extradited from Canada, and, if so, whether such proceedings would be lengthy.

7. Defendant could not be subject to in-person supervision by Pretrial Services while on bail in Canada.

8. The evidence shows that defendant arrived in the United States from a city that is the primary source for the manufacture of "ecstasy," that he is employed in a trade, specifically, as owner of a nightclub, where

ecstasy is widely consumed, that he was originally scheduled to take the same airline flight from Amsterdam to Philadelphia as Bleeker, the alleged drug courier in this case, but at the last moment both changed to a later flight and Bleeker changed to a later flight on a different airline, that he was identified by Bleeker as the person with whom he dealt in a prior transaction in Philadelphia with the same modus operandi, that he called Bleeker from the hotel lobby and arranged to come to Bleeker's hotel room, and that an amount of ecstasy valued between $300,000 and $500,000 was found in the false bottom of Bleeker's suitcase.

9. There is evidence of defendant's consciousness of guilt because defendant provided false information to Customs Inspectors concerning his travel plans so as to disguise his visit to the United States, and registering at a hotel under a false name.

[4] 10. The Court finds that the evidence against defendant at this early stage in the proceedings, that he was the buyer of a large quantity of drugs in this transaction, rises to the level of more than probable cause. [FN4]

> FN4. Defendant claims that under the authorities of United States v. Idowu, 157 F.3d 265 (3d Cir.1998), United States v. Thomas, 114 F.3d 403 (3d Cir.1997), United States v. Wexler, 838 F.2d 88 (3d Cir.1988), and United States v. Cooper 567 F.2d 252 (3d Cir.1977), based on the evidence proffered by the Government so far, the case would be subject to dismissal under Federal Rule of Criminal Procedure 29 because the Government cannot show that defendant knew he was involved in a drug transaction. Even if this were true, and in light of all of the factors to be considered under 18 U.S.C. § 3142(g), it would not compel release, since the relative strength of the evidence against defendant is only one factor to be considered in the complex calculus involved in the decision to grant pretrial detention. At this early stage of the proceedings, the Government needs not show, as a prerequisite to obtaining pretrial detention, that it can prove its case beyond a reasonable doubt.

*610 Defendant has attempted to rebut the Government's case as follows:

1. Defendant has agreed to execute an irrevocable waiver of extradition, which provides that defendant will appear at all required court appearances and irrevocably waives any and all rights defendant may have to contest extradition either in Canada or anywhere else in the world. Defendant proffered a letter from Canadian counsel that such a waiver is

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

51 F.Supp.2d 605                                                                                                Page 5
(Cite as: 51 F.Supp.2d 605, *610)

enforceable in Canadian courts. On the other hand, the Government proffered a letter from counsel at the Canadian Ministry of Justice, [FN5] which states:

> FN5. The letter from counsel at the Canadian Ministry of Justice was not available to Magistrate Judge Smith prior to his order denying pretrial detention of defendant.

Firstly, a waiver of extraditability signed by a defendant in the United States is not enforceable in Canada. If the defendant were to contest his return, the United States would have to initiate extradition proceedings to have the fugitive returned.
On the issue of collecting Canadian assets in a bail forfeiture proceeding, this is not a simple matter in our own domestic proceedings. It must be enforced like a civil debt.
While Canada extradites its nationals, it is not a simple matter. Extradition from Canada involves two distinct phases. The first phase, often referred to as the "judicial phase," requires an extradition judge to determine, on the basis of the affidavit of evidence submitted by the requesting state, whether the conduct in the foreign state would constitute an offence in Canada if it had occurred here and if there is sufficient evidence to put the fugitive on trial.
In the second, or "executive" phase, the Minister of Justice must make a decision whether the fugitive should be surrendered to the requesting state in accordance with the relevant extradition treaty.
The decision of the extradition judge and the decision of the Minister of Justice on surrender are subject to appeal to the Court of Appeals of the province and possibly to the Supreme Court of Canada.
If the fugitive contests extradition and pursues his right of appeal, the entire process can take two to three years.

Letter of May 27, 1999 from Barbara Kothe to True Rowan at 1-2. The Court concludes, based upon the letter from counsel at the Canadian Ministry of Justice, that there is substantial legal doubt and uncertainty as to whether the irrevocable waiver of extradition would be given full force and effect by Canadian courts.

2. Defendant has agreed to put up the stock of a corporate fitness center owned by his father, which he estimates is worth $800,000.00, and to grant the United States a mortgage, which would give the United States a junior position on the family home, which defendant contends has equity in the amount of $250,000.00. Again, based upon the letter from counsel at the Canadian Ministry of Justice, and in the absence of a showing that under Canadian real property law, foreclosure and execution could be carried out in the manner suggested by defendant, the Court finds that there is substantial legal doubt and uncertainty concerning the real value of the these foreign sureties.

3. Defendant contends that he has a counterincentive not to flee in that if he did so, he would forfeit any claim to serve his sentence in Canada rather than in the United States, if convicted, pursuant to the Prisoner Transfer Treaty between the United States and Canada. The Court agrees that this is a counterincentive, but finds that it is not of significant magnitude to reasonably assure defendant's presence at trial.

*611 4. Defendant is a first-time offender without a prior history of drug dealing or trafficking, and ecstasy, the drug involved in the transaction, is an "enhancer" or "distorting" drug, and not a narcotic drug.

IV. CONCLUSION

Given the difficulty of effectuating extradition and the legal uncertainty involved in executing on an appearance bond and foreclosing on a mortgage in Canada, in light of the relative strength of the evidence at this early stage in the proceedings, and considering defendant's prior extensive foreign travel, and use of a false identity, and taking into account the significant period of incarceration facing the defendant, if convicted, and the difficulty of implementing a program of effective supervision in Canada while defendant is on bail, the Court finds that no condition or combination of conditions will reasonably assure defendant's presence at trial.

An appropriate Order follows.

ORDER

AND NOW, this 8th day of June, 1999, upon consideration of the Government's motion for revocation of release order and appeal, it is hereby ORDERED that the motion is GRANTED. [FN1]

> FN1. This written order memorializes the Court's oral order issued from the bench on June 3, 1999.

It is further ORDERED that defendant be committed to the custody of the United States Marshal Service

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

51 F.Supp.2d 605
**(Cite as: 51 F.Supp.2d 605, \*611)**

Page 6

pending trial.

AND IT IS SO ORDERED.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

Edward J. Artes-Roy
Kristie Artes-Roy
P.O. Box 154 Station A
Vancouver, B.C.
Telephone (604) 669-0822
Facsimile (604) 669-0822

March 18, 1994

Warren M. Christopher
Secretary of State
United States Dep't of State
2201 "C" St. S.W.
Washington, D.C.  20520

Dear Mr. Secretary,

Re: Expatriation of citizenship by Edward J. Artes-Roy and Kristie
    Artes-Roy and two minor daughters Dianna and Alexandra

On November 24th, 1993 my wife and myself voluntarily renounced our
U.S. citizenship. We also, renounced that of our daughters, realizing
however, that the legality of the revocation of rights by parents
against off-springs was most likely only a symbolic act, at best.

We directed our certified and notarized Declaration of Expatriation
to the Chief Executive officer of the United States, Mr. Clinton, and
have not, as yet, received an acknowledgment, despite, the fact the
return receipt indicates it was received at the White House on November
29th, 1993.

We enclose a photocopy of the communication and the proof of delivery
and request that you check your files and that you acknowledge that
our Declaration has been received and processed.

For the record, we have taken oaths of allegiance to powers foriegn
to the United States of America.

Yours respectfully,

Edward J. Artes-Roy
EJA:rhb

GOVERNMENT
EXHIBIT
2A

EDWARD ARTES-ROY
KRISTIE ARTES-ROY
PO BOX 154-STATION A
VANCOUVER,BC
CANADA V6T 1A0
PH/FAX 604-684-1902

November 24,1993
Via Certified Mail

The Honorable William Clinton
President of The United States
The White House
Washington, DC 20000

Dear Mr. President,

We are writing you in your capacity as the CEO for the United
States of America. Please find enclosed the original of
a document entitled "Declaration of Expatriation" whereby
our family is renouncing its citizenship.

This document should be read as an expression of anger somewhere
between the burning of one's draft card and an act of self-
immolation on the steps of the White House. Our anger arises
from what can only be described as  official lawlessness by
Federal Agents in the matter of IRS/CID agent Thomas Altif and
the Sheriff of Lake County, George Knupp,Jr. Our views on this
matter are well documented at Justice, the IRS, the Inspector
General of the Treasury and the US Postal Office, none of whom
will carry out an impartial investigation of our allegations.



In any event, we are out of here and longer are able to, nor do we
intend to, ask for any redress. We expended significant time and
capital in Nevada in the 1992 elections (we like to think our
efforts made the difference on  those last 5,000 votes for you).
We are proud of that effort. However,it is now obvious that the
damage done by 12 years of Bush/Reaganism to the Department of
Justice is irreversible anytime in the near future, regardless of
the good intentions of your wife, the Attorney General and others.

Please accept our sincere wishes and hopes for you, your family
and the American people.

Yours respectfully,



Edward and Kristie Artes-Roy
enc: Declaration of Expatriation(2)
cc: Senator Harry Reid

## DECLARATION OF EXPATRIATION

We, the undersigned hereby expatriate ourselves from the
United States of America, effective immediately. We
acknowledge that we no longer enjoy, nor do we expect to
receive, any benefits that accrued to citizens of the United
States. Likewise, we no longer recognize any duties or
obligations to the United States. This Declaration is
intended to be irrevocable and final.

Edward J. Artes-Roy
DOB 2/21/44
SS# 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

Signed this 24H day of
November, 1993
Vancouver, British Columbia

G. ROY LONG JR. and Notarized
BARRISTER & SOLICITOR
400—409 GRANVILLE STREET
VANCOUVER B.C.
Kristie Artes-Roy
DOB 2/23/67
SS# 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

Signed this 24H day of
November, 1993
Vancouver, British Columbia

G. ROY LONG JR.
BARRISTER & SOLICITOR
400—409 GRANVILLE STREET
VANCOUVER B.C.
V6C 1T2
Witnessed and Notarized

(Dianna Artes-Roy)
Artes-Roy
DOB 5/12/88

Dianna Artes-Roy
by her best friends Edward
and Kristie Artes-Roy
Signed this 24H day of
November, 1993
Vancouver, British Columbia

G. ROY LONG JR.
BARRISTER & SOLICITOR
400—409 GRANVILLE STREET
VANCOUVER B.C.
V6C 1T2
Witnessed and Notarized

Alexandra Artes-Roy
DOB 6/10/93
SS# none

Alexandra Artes-Roy
by her best friends Edward
and Kristie Artes-Roy
Signed this 24H day of
November, 1993
Vancouver, British Columbia

G. ROY LONG JR.
BARRISTER & SOLICITOR
400—409 GRANVILLE STREET
VANCOUVER B.C.
V6C 1T2
Witnessed and Notarized

7

Edward J. Artes-Roy
402-409 Granville St.
Vancouver, BC V6C 1T2
Telephone-604-669-0822
Facsimile -604-669-0832

February 7, 1996

Rhonda Watson
United States Consulate General
1095 W. Pender St.
US Citizen Services Unit
Vancouver, BC V6E 2M6

Dear Ms. Watson,

Re: Renunciation of Citizenship

On December 5th, 1995 you wrote me suggesting that I reconsider my decision in reference to the above matter.

I have taken your advice and have decided not to continue with this process. Accordingly, kindly mail my passport back to me and accept my apologies for the time you and your staff have expended on this file.

Sincerely,

Edward J. Artes-Roy

FEB 0 9 1996

rec'd

GOVERNMENT
EXHIBIT

2B



**CONSULATE GENERAL OF THE**
**UNITED STATES OF AMERICA**

AMERICAN CITIZEN SERVICES UNIT
1095 West Pender Street
Vancouver, B.C.
V6E 2M6

February 13, 1996

Mr. Eward J. Artes-Roy
402-409 Granville St.
Vancouver, B.C.
V6C 1T2

Thank you for your letter of February 7, in which you informed this office that upon reconsideration, you have now decided not to proceed with the process of formally renouncing your U.S. citizenship.

I have been instructed by the Department of State in Washington, D.C., not to release your U.S. passport to you, in view of the fact that you are subject to an outstanding federal warrant of arrest issued August 4, 1994 by the United States District Court, Middle District of Orlando.

Under the circumstances, your U.S. passport will be retained at this office until I receive further directions from Washington.

Sincerely,

Rhonda J. Watson
Chief,
American Citizen Services Unit

YTeja

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

RE:   Grand Jury Investigation                                   MISC. No. OS-92-73

---

### *IN CAMERA* ORDER AND
### NOTICE OF HEARING

This cause came on for consideration with oral argument on the following motion filed herein:

MOTION:   **GOVERNMENT'S *EX PARTE* MOTION FOR NEW SHOW CAUSE HEARING**

FILED:   In Court (closed session) on May 20, 1994

Thereon it is **ORDERED** that the motion is **GRANTED**. Edward Roy shall appear before the undersigned on **WEDNESDAY, JUNE 22, 1994**, at 10:30 A.M. in Courtroom #6, George C. Young U.S. Courthouse and Federal Building, 80 North Hughey Avenue, Orlando, Florida to show cause why he should not be found in contempt for his failure to appear before Grand Jury 93-1 on March 3, 1994, as required by subpoena. The government shall exert its best efforts to effect proper service of this Order on Mr. Roy.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this 24th day of May, 1994.

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDG

Copies furnished to:

C. Patrick Hogeboom, III
Joseph E. Bender
Edward Roy

GOVERNMENT
EXHIBIT
3A

AO 72A

| Registered Article (Envoi recommandé) | | | | | |
|---|---|---|---|---|---|
| ☑ Letter (Lettre) | ☐ *Printed Matter (Imprimé) | ☐ Other (Autre) | ☐ Recorded Delivery (Envoi à livraison attestée) | | ☐ Express Internatio |

Completed by the office of origin. (A remplir par le bureau d'origine.)

| Insured Parcel ☐ (Colis avec valeur déclarée) | Insured Value (Valeur déclarée) | Article Number R482 618 346 |
|---|---|---|

Office of Mailing (Bureau de dépôt)
32801   DT   Orlando   Date of Posting (Date de dépôt) MAY 25 1994

Addressee Name or Firm (Nom ou raison sociale du destinataire)
Edward Roy

Street and No. (Rue et No.)
P.O. Box 154   Station A

Place and Country (Localité et pays)
Vancouver, BC   V6C 2M3   Canada

Completed at destination. (A compléter à destination.)

This receipt must be signed by: (1) the addressee; or, (2) a person authorized to sign under the regulations of the country of destination; (3) if these regulations so provide, by the employee of the office of destination. This signed form will be returned to the sender by the first mail.

(Cet avis doit être signé par le destinataire ou par une personne y autorisée en vertu des règlements du pays de destination ou, si ces règlements le comportent, par l'agent du bureau de destination, et renvoyé par le premier courrier destiné à l'expéditeur.)

☐ The article mentioned above was duly delivered.
(L'envoi mentionné ci-dessus a été dûment livré.)

Date JUN 1994

Signature of Addressee (Signature du destinataire)

Office of Destination Employee Signature (Signature de l'agent du bureau de destination)

PS Form 2865, October 1992 (Reverse)

GOVERNMENT EXHIBIT
3B



## Return Receipt for International Mail

(Registered, Insured, Recorded Delivery, Express Mail)

### Avis de réception

Administration
des Postes des
Etats-Unis
d'Amérique

## *Par Avion*

Postmark of the office
of ...........................

6478 ......
MAIN COUNTER

9 JUN 1994

COMPTOIRS PRINCIPAL
VANCOUVER, B.C.

| Return by the quickest route (air or surface mail), a découvert and postage free. | The sender completes and indicates the address for the return of this receipt. (A remplir par l'expéditeur, qui indiquera son adresse pour le renvoi du présent avis.) |
|---|---|
| | Name or Firm (Nom ou raison sociale) |
| A renvoyer par la voie la plus rapide (aérienne ou de surface), à découvert et en franchise de port. | *United States District Court - office of the Clerk* |
| | *Attn. Nancy Stephens, Deputy Clerk* |
| | Street and Number (Rue et no.) |
| | *80 N. Hughey Ave* |
| | City, State, and ZIP + 4 (Localité et code postal) |
| | *Orlando, FL 32801* |

### UNITED STATES OF AMERICA                    Etats-Unis d'Amérique

PS Form **2865**, October 1992

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

No. _94-102-CR-ORL-18_

18 U.S.C. § 401(3)
Fed. R. Crim. P., Rule 42(b)

EDWARD J. ROY
a/k/a Edward J. Artes-Roy

The Grand Jury charges:

### COUNT ONE

On or about June 22, 1994, in Orange County, Florida, in the Middle District of

Florida,

## EDWARD J. ROY
### a/k/a Edward J. Artes-Roy

the defendant herein, willfully and knowingly did commit criminal contempt by disobeying

and resisting the lawful writ, process, order, rule, decree and command of the United

States District Court for the Middle District of Florida, Orlando Division, in that in the

course of proceedings styled IN RE: GRAND JURY INVESTIGATION, MISC. NO.

OS-92-73, the defendant EDWARD J. ROY, a/k/a Edward J. Artes-Roy, failed to appear

at a show cause hearing on Wednesday, June 22, 1994, at 10:30 a.m. in Courtroom No. 6,

George C. Young, United States Courthouse and Federal Building, 80 North Hughey

Avenue, Orlando, Florida, pursuant to an order styled IN CAMERA ORDER AND

NOTICE OF HEARING dated May 24, 1994.

GOVERNMENT
EXHIBIT
3C

All in violation of Title 18, United States Code, Section 401(3) and Rule 42(b),

Federal Rules of Criminal Procedure.

A TRUE BILL

_Lynn L. Forbes_
Foreman

J. RANDOLPH MANEY
Chief, Southern Criminal Enforcement Section
Tax Division
U.S. Department of Justice

By _C. Patrick Hergebroom_
   C. Patrick Hogeboom
**Trial Attorney**

By _Joseph E. Bender_
   Joseph E. Bender
**Trial Attorney**

2

GJ # 93-1-29

No. _____

# UNITED STATES DISTRICT COURT

MIDDLE District of FLORIDA

ORLANDO Division

## THE UNITED STATES OF AMERICA

vs.

EDWARD J. ROY, a/k/a Edward Artes-Roy

## INDICTMENT

Viol. 18 U.S.C. § 401(3)
Fed. R. Crim. P. 42(b)

A true bill.

_____
Foreman

Filed in open court this 4th day
of August A.D. 19 94

_____
Clerk

Bail $ _____

FORM OBD-34
SEP 1978

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 85-8054-Cr-RYSKAMP (s)

UNITED STATES OF AMERICA,

Plaintiff,

vs.

REINHARD MUELLER,

Defendant.
_____/

## PLEA AGREEMENT

The United States of America and the defendant, REINHARD MUELLER, do hereby enter into the following Plea Agreement pursuant to Rule 11(e) of the Federal Rules of Criminal Procedure:

1. The defendant, REINHARD MUELLER agrees to tender a plea to Count III of the superceding information filed against him herein, charging him with a violation of Title 26, United States Code, Section 7206. That statute proscribes _inter_ _alia_ subscribing to and aiding and assisting the preparation of income tax returns which contain false statements. Count III carries a maximum sentence of a five thousand dollar ($5,000.00) fine or a period of three (3) years imprisonment or both. The United States understands that Mr. Mueller will seek to tender his plea of guilty under the doctrine of _North Carolina v. Alford_, 400 U.S. 25 (1970).

2. In tendering this plea, Mr. Mueller does not object to

GOVERNMENT
EXHIBIT
4A

the filing of the superceding information and waives his right to indictment as to the charges in Count III therein.

3.   The United States agrees to bring no further charges against Mr. Mueller relating to his involvement with A. T. Bliss & Company and the Classic Adventures tax shelter program.

4.   The United States understands that counsel for REINHARD MUELLER will urge the Court to impose, as the appropriate sentence as to Mr. Mueller, the maximum fine authorized by the statute, namely a five thousand dollars ($5,000.00) fine.   The United States agrees to take no position as to sentence.

5.   The United States opposes the defendant's recommendation of a fine only sentence but agrees to make no specific recommendation.   The United States and its agents reserve the right to inform the Court and the Court's probation officer of all facts pertinent to the sentencing process, as well as the right to supply the Court's probation officer with all relevant information concerning the defendant.   However, the United States and its agents agree to make no recommendation as to sentence other than as stated in this agreement.

6.   The parties understand and agree that the Court may impose any sentence authorized by law.   The United States undertands that Mr. Mueller will tender his plea under Rule 11 (e)(4) of the Federal Rules of Criminal Procedure and the A.B.A. standards relating to pleas, and will ask that if the Court cannot sentence within the parameters of this agreement, the Court should so advise the parties and defendant shall have the

- 2 -

opportunity to withdraw his plea.

7.   There are no other agreements between the parties other than as stated herein.

Respectfully submitted,


Leon B. Kellner
United States Attorney

Richard Kamp
Assistant U.S. Attorney

Michael S. Pasano
Attorney for Defendant

9/18/86
Date

Reinhard Mueller
Defendant

- 3 -



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:  85-8054-CR-RYSKAMP**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RINEHARD MUELLER,

    Defendant.

_____/

FILED by _____ D.C.

JUL 2 2 1994

T. G. CHELSOTIS
CLERK, U. S. DIST. CT.
S.D. OF FLA.-W.P.B.

## ORDER RE:
## EMERGENCY MOTION TO ENFORCE PLEA AGREEMENT

THIS CAUSE came to be heard upon the Petitioner Rinehard Mueller's Emergency Motion to Enforce Plea Agreement.  The Court having reviewed the evidence presented, as well as the argument of counsel, it is thereupon;

ORDERED AND ADJUDGED as follows:

1.    The Petition is Granted.

2.    The United States is enjoined from presenting any evidence of Defendant Mueller's conduct, prior to November 7, 1986, with regard to Counts I and II of the indictment pending against him in the Middle District of Florida.

3.    This court leaves the implementation of this Order to the United States District

GOVERNMENT
EXHIBIT
4B

-2-

Judge who presides in the proceedings in the Middle District of Florida.

DONE AND ORDERED at West Palm Beach, Florida, this _22_ day of July, 1994.

KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE


cc:    David Roth, Esquire, P.O. Box 770, West Palm Beach, FL 33402
       Christopher L. Smith, Esquire, 720 West State Road 434, Winter Springs, FL 32708
       C. Patrick Hogeboom, III and Joseph Bender, Esquire, Department of Justice/Tax
       Division, 10th & Constitution, N.W., Rm#4132, Washington D.C. 20530

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,           )
                                    )
            v.                      )       Case No.: 85-8054-CR-RYSKAMP
                                    )
EDWARD ROY.                         )
_____   )

**ORDER REGARDING THE MOTION OF
EDWARD J. ROY TO ENFORCE HIS 1986 PLEA AGREEMENT**

THIS CAUSE came before this Court upon the Motion of Edward J. Roy to Enforce His

1986 Plea Agreement and Incorporated Memorandum of Law.  The Court, having reviewed the

pleadings, thereupon;

ORDERED AND ADJUDGED as follows:

1. Edward Roy's motion is denied.

2. The United States shall base its case-in-chief evidence involving Defendant Roy's

conduct to evade the payment of taxes owed by A.T. Bliss and its related entities upon overt acts

(Count 1) and affirmative acts (Counts 3, 4, and 5) which Edward Roy committed, or directed,

after November 7, 1986, regarding the indictment pending against Edward Roy in the Middle

District of Florida. The United States may only present evidence of Defendant Roy's conduct to

evade the payment of taxes owed by A.T. Bliss and its related entities, prior to November 7,

1986, as factual background with regards to Counts 1, 3, 4, and 5 of the indictment pending

against Edward Roy in the Middle District of Florida.   There are no other restrictions on the

Government's evidence.

3. This Court leaves the implementation of this Order to the United States District Court Judge who presides in the proceedings in the Middle District of Florida.

DONE AND ORDERED at West Palm Beach, Florida, this _____ day of October, 2000.


_____
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE


cc:   Michael S. Pasano, Esq.                Joseph Bender, Esq.
      Zuckerman, Spaeder, Taylor & Evans, LLP   U.S. Department of Justice
      Miami Center - Suite 900                Tax Division - SCES
      201 South Biscayne Boulevard                Room 5712
      Miami, FL 33131                         600 E Street, NW
                                              Washington, DC 20004

-12-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail

this 2ᵈ day of October, 2000, to:

Michael S. Pasano
Zuckerman, Spaeder, Taylor & Evans, LLP
Miami Center - Suite 900
201 South Biscayne Boulevard
Miami, FL 33131

Joseph E. Bender